Jack L. Earl, Jr.
CCA/FCC
P.O. Box 6200
Florence, AZ 85232

RECEIVED

MAY 3 0 2006

CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JACK EARL,<br><br>        Plaintiff,<br><br>v.<br><br>MIKE ADDINGTON,<br>CYNDI ADDINGTON,<br>MATTHEW ITKOWITZ,<br>JOHN/JANE DOE CONTRACT AIR CHARTER,<br>JANE DOE FLIGHT NURSE,<br>JOHN/JANE DOE U.S. MARSHAL,<br>FLORENCE CORRECTIONAL CENTER<br>JOHN/JANE DOE S.O.R.T. TEAM MEMBER,<br>FRANK LUNA,    TIMOTHY LYDEN,<br>DONALD BRANDON, LEITONI TUPOU,<br><br>        Defendants. | CASE NO. 3:06-CV-00126 TMB |

## COMPLAINT

Plaintiff, Jack L. Earl, a prisoner with a disability of the State of Alaska, brings this complaint against Defendants and alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for declaratory, injunctive, and monetary relief brought under 42 U.SC. § 1983, Title II of the American with Disabilities Act, Section 504 of the Rehabilitation Act, the Eighth and Fourteenth Amendments to the United States Constitution, and Article I, §§ 3, 7, and 12 of the Alaska Constitution to address the Defendants' failure to provide access to services and proper medical care to the Plaintiff during a transfer from Alaska to Arizona and for failures to provide due process protections to the Plaintiff after his arrival at the airport and contracted correctional center in Florence, Arizona.

## JURISDICTION AND VENUE

2. This court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(3) and (4), and 28 U.S.C. § 1367(a). The matters in controversy arise under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et. seq., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and 28 U.S.C. § 1983.

3. Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

### PLAINTIFF

4. Jack Earl is a prisoner incarcerated by the state of Alaska at the Corrections Corporation of America facility Florence Correctional Center (CCA/FCC) in Florence, Arizona who has a physical impairment that substantially limits one or more of his major life activities. He has been denied access to programs, services, and activities offered and administered by defendants and was transferred to CCA/FCC under the authority and care of the defendants. Mr. Earl has exhausted the administrative remedies available to him.

### DEFENDANTS

5. Defendant Michael Addington is the former Director of Institutions for the Department of Corrections (DOC) and is sued in his individual capacity. As Director of Institutions, Mr. Addington was responsible for the transfer of preparation and transport of prisoners from one facility to another.

6. Defendant Cyndi Addington is the Prisoner Transport Coordinator for DOC and is sued in her individual capacity. As Prisoner Transport Coordinator, Ms. Addington is responsible for managing the transfer itself, including the special medical needs of prisoners being transferred and the briefing other individuals involved in the transfer.

7. Defendant Matthew Itkowitz is an employee of the United States Marshall Service (USMS), Air Operations and is sued in his official and individual capacities. Mr. Itkowitz was the Flight Officer in Charge of the airlift transferring prisoners for DOC to Mesa, Arizona. As the Flight Officer in Charge, Mr. Itkowitz was responsible for coordinating the management of prisonrs with the DOC Prisoner Transport Coordinator, as well as briefing his own staff.

8. Defendant John/Jane Doe was the former contractor to DOC for the transport of prisoners from Alaska to Arizona and is sued in his/her individual capacity. Doe, owner/operator

2

of the aircraft used for the transport, was responsible for the functioning of its restroom facilities and the safety of the aircraft and its passengers.

9. Defendant Jane Doe is a Flight Nurse employed by either DOC or USMS, and is sued in her individual capacity. Ms. Doe was responsible for the proper medical care, special needs care, and assistance if accommodations were so required.

10. Defendant John Doe is an employee of the United States Marshall Service, Air Operations, and is sued in his official and individual capacities. Mr. Doe, a United States Marshall, was responsible for coordinating prisoner management during the flight, including moving prisoners to restroom facilities during the flight and working with the Flight Nurse and the Flight Officer in Charge regarding medical and/or security issues.

11. Defendant John/Jane Doe is an SORT Team employee of Corrections Corporation of America, Inc. (CCA) at their Florence, Arizona facility and is sued in his/her individual and official capacities. Doe is responsible for securing and regaining control of problem prisoners through the appropriate application of force.

12. Defendant Frank Luna, warden of the Florence, Arizona facility, is an employee of CCA at their Florence, Arizona facility and is sued in his official and individual capacities. Mr. Luna is responsible for all aspects – including, but not limited to, disciplinary actions, segregation, prisoner housing, and prisoner transport – of contract prisoners, including compliance with their individual rights and privileges.

13. Defendant Timothy Lyden is the DOC Standards Administrator and Grievance Coordinator and is sued in his official and individual capacities. Mr. Lyden is responsible for correcting violations of state and federal law and regulations brought to his attention by prisoners during the administrative grievance process.

14. Defendant Donald Brandon is the former Americans with Disabilities Act Coordinator for the state of Alaska and is sued in his individual capacity. Mr. Brandon was responsible for investigating and correcting ADA-relating allegations of abuse and discrimination when such violations are brought to his attention.

15. Defendant Leitoni Tupou is the Director of Institutions for DOC and is sued in his official capacity. As Director of Institutions, Mr. Tupou is responsible for the transfer of preparation and transport of prisoners from one facility to another.

## FACTS

16. In June 1995, after suffering for 11 months from rectal bleeding, loss of weight, and other symptoms while in the care of DOC, Earl was diagnosed by Dr. Charles Shannon with raging ulcerative colitis.

17. On April 10, 1996, after clinical treatment was unsuccessful, Earl was airlifted from Spring Creek Correctional Center to Alaska Regional Hospital for emergency surgery to remove his perforated colon, a colostomy. A colostomy, performed when the colon is permanently damaged, is an incision into the colon to create an artificial opening or "stoma" to the exterior of the abdomen. This opening serves as a substitute anus through which the intestines can eliminate waste products. The bowel movements fall into a collection pouch.

18. As a result of the colostomy, Earl is unable to control his bowels and must defecate through a stoma into a colostomy bag.

19. In a typical day, Earl must empty the colostomy bag approximately seven to ten times; approximate cleaning time (without restraints) is five to fifteen minutes. The variation in time depends on whether the pouch needs to be changed, which occurs once a day, and whether medication is needed, which occurs as needed.

20. This impairment has substantially impacted many of Earl's major life activities:
    a. He has stopped eating regular breakfasts, limiting himself to a small bowl of oatmeal with a banana, to reduce the need for self-care.
    b. Earl must limit physical exertion in life activities that involve physical activity, including walking, bending, lifting, and working.
    c. Earl must use a lumbar elastic band around his torso so that his intestine will not protrude or prolapse from his stoma if he strains while engaging in physical activity.
    d. Earl's major life activity of sleeping is also affected; he requires a double mattress and extra blanket for additional padding. Yet, he rarely sleeps for more than two hours at a time, due to discomfort and the need to evacuate the pouch's contents.

21. On November 24, 2000, the state of Alaska has stated that Earl's condition qualifies as a disability under the Americans with Disabilities Act (ADA).

22. To adequately care for the colostomy, Earl needs medical supplies. These supplies include:

    a. Running water
    b. Pre-cut 32mm opaque colostomy pouches
    c. Duoloc pouch tail enclosure clip
    d. 3-inch strip of Transpore tape
    e. 1624W Tegraderm
    f. Medi-Aire room deodorizing spray
    g. 2 8-oz irrigation bottles
    h. Karaya powder
    i. Stoma adhesive (paste or powder)
    j. Skin barrier wipes
    k. Bacitracin zinc ointment
    l. Adhesive remover wipe
    m. Bio-waste disposal bag
    n. Toilet paper

23. To clean his colostomy bag, Earl needs privacy and cleanliness. The cleaning procedure requires the use of two hands that can move independently. Earl must be able to prepare his supplies and remove the ~~pouch~~ clip. Then, he must carefully clean the pouch, disinfect, and rinse the pouch. To dispose of fecal matter, he must have access to running water. Then, Earl must dry the pouch and reapply the ~~pouch to the stoma~~ clip/tape. Except when Earl disposes of the fecal matter into the toilet, Earl maintains control of the pouch at all times with his left hand.

24. To change his colostomy bag, Earl needs privacy and cleanliness. He must first evacuate any fecal matter in the pouch, placing the pouch in a biowaste disposal bag. Earl must then clean the stoma area, remove any residual adhesive, and rinse and dry the area. If needed medication is then applied, with excess wiped off. Earl must then prepare the area to attach the new pouch and attach and secure the pouch. As with the cleaning of the pouch, Earl then thoroughly washes his hands to ensure cleanliness.

25. On or about September 12, 2003, DOC classified Earl has eligible for transfer to the Arizona contract facility through a special reclassification hearing. Earl appealed this decision.

Earl, however, was transferred from Spring Creek Correctional Center in Seward to the Anchorage Jail to await transfer to Arizona on or about December 8, 2003.

26. On or about December 14, 2003, Earl provided the mod officer with the supplies necessary to care for his colostomy prior to leaving the Anchorage Jail for the trip to Arizona. Earl was later assured by Officer Holcomb that the supplies had been boxed and clearly marked for ease of access during transport.

27. Earl, fully restrained in leg irons, belly chains, and handcuffs to the bellychains, was then transported from the Anchorage Jail to the airplane being used by the United States Marshall Service to transport the Alaskan prisoners.

28. On the tarmac outside the plane, Earl asked to empty his colostomy bag. Earl was then escorted behind a snowbank by four officers, supervised by Director Addington. Earl was provided with two small hexagonal bottles joined together with plastic and a paper towel to change his colostomy bag while kneeling in the snow in cold weather. Earl remained handcuffed to a bellychain during the entire cleaning process. Earl was urged to quickly complete the cleaning process and returned to the plane.

29. When Earl complained about the conditions and his treatment, he was roughed up by the shortest of his escorts.

30. After being escorted back to the plane, Earl boarded the plane and was sat in front of the right wing by the window. Earl remained in restraints – including leg shackles and handcuffs connected to bellychains that rode directly over the pouch tucked inside Earl's pants – while seated.

31. Earl asked to use the restroom twice during the trip from Anchorage to Arizona.

32. When Earl was escorted to the restroom fifteen minutes after he made his first request, Earl asked for his colostomy supplies, only to be told by the US Marshall near the restroom that he didn't know anything about any supplies and that Earl's restraints would not be removed in any manner.

33. Upon entering the bathroom, Earl discovered the pouch full of gas. When he attempted to wash his hands after completing the process, he discovered there was no water in the plane restroom. When he complained to the marshal, he was told to display his hands, which were then sprayed with hand sanitizer.

6

34. About two hours later, Earl again asked to use the restroom to empty his colostomy bag. When he asked again for his medical supplies, they were not given to him. Earl's request to have one hand free from his restraints was similarly denied.

35. Because of the lack of supplies and the difficulty of cleaning a pouch with restraints, Earl mishandled the pouch as he was cleaning it, resulting in some of the contents falling directly on to the toilet and Earl's clothing. He attempted to clean his pouch to best of his abilities, given his situation.

36. Earl was only given hand sanitizer after exiting the bathroom.

37. After exiting the bathroom, Earl was returned to his row and placed in an aisle seat. For the remainder of the flight, Earl endured threats and harassment from Itkowitz, who accused Earl of acting intentionally in the bathroom. Earl listened to Itkowtiz's harassment concerning his disability and status of a prisoner for sometime before responding in kind. During the rest of the flight, Itkowitz purposefully physically assaulted Earl every time he walked by Earl's aisle.

38. Upon arriving in Arizona but before deplaning, Earl noticed that Itkowitz spoke with several men dressed in black riot gear, pointing up toward's Earl.

39. When Earl deplaned, he was separated and roughly dragged by the men in riot gear, Florence Correctional Center SORT team members. Earl was slammed against the van several times, as he tried to figure out what was happening, causing injury and pain.

40. Earl was then escorted to a van, where he was placed in a small caged area; other prisoners with black boxes over their handcuffs were placed in the larger back caged area.

41. When they arrived at Florence, Earl was left in his area for four hours, even though the other prisoners were taken out of the van. When Earl was finally taken out of the van, he was taken by four SORT team members to the segregation area and placed in a 3x3 foot, caged, locked shower and left alone.

42. Earl stood in the shower with full restraints for approximately one hour before the restraints were removed and he was told to remove his clothes and thrown them outside the shower.

43. When Earl requested a restroom to attend to his colostomy pouch, he was denied. Earl remained in the shower for another hour.

44. An employee eventually came by and attempted to assist Earl with his hygiene needs. Earl was then given clothing, restrained and cuffs and leg irons, and escorted upstairs into a cell

7

with another prisoner, Kevin Frank. Earl asked that his ADA-permitted single cell be granted to him; this request was denied.

45. Earl remained double-celled in segregation, locked down 24 hours a day, for seven of his eight days in segregation. During the first seven days of segregation, he was never told why he had been placed in segregation. When he was transferred to a single, handicapped cell on his eighth day of segregation, Earl was told that his placement was due to his actions on the plane trip from Alaska but no specifics were mentioned.

46. Once released from segregation, Earl was again double-celled.

47. CCA staff then accused Earl of hoarding medication due to a note by a nurse in Earl's prescription sheet; a search of Earl's cell provided no evidence. When Earl brought this to the attention of the nurse, the nurse filed a disciplinary report against Earl, who was then segregated as an immediate threat to the security and orderly administration of the facility for five additional days.

48. Earl's problems with CCA staff were a result of Earl's seeking his accommodations and grieving the denial of his accommodations and the staff's filing of false disciplinaries and failure to comply with due process concerning his segregation.

49. Earl received no relief from the grievances and appeals he filed challenging his mistreatment before, during, and after the airlift and the denial of due process regarding his subsequent segregation.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

50. Earl has exhausted all administrative remedies available to him. A copy of the final decision of the state of Alaska, dated July 19, 2004, is attached to this complaint.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of the Americans with Disabilities Act**

51. Plaintiff is a qualified individual with a disability as defined in the American with Disabilities Act. He has a physical impairment that substantially limits one or more major life activity. As a state prisoner, he meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by DOC. 42 U.S.C. § 12102(2); 42 U.S.C. § 12131(2).

8

52. Defendants Mike Addington, Cyndi Addington, Matthew Itkowitz, John and/or Jane Doe Contract Air Charter, Jane Doe Flight Nurse, and Director of Institutions Leitoni Tupou discriminated against the physically disabled Mr. Earl by denying him appropriate supplies and conditions prior to and during the airlift to Arizona.

53. The defendants named above discriminated against Plaintiff on the basis of his disability in violation of 42 U.S.C. § 12132.

54. The defendants named above are agents or officials of public entities and/or public entities as that term is defined under 42 U.S.C. § 12131(1)(B).

## SECOND CAUSE OF ACTION

### Violation of Section 504 of the Rehabilitation Act

55. Plaintiff is a qualified individual with a disability as defined in Section 504 of the Rehabilitation Act. He has a physical impairment that substantially limits one or more major life activity, including but not limited to providing self-care. As a state prisoner, plaintiff meets the essential requirements for the receipt of services or the participation in programs or activities provided by defendants. 42 U.S.C. § 12102(2); 42 U.S.C. § 12131(2); 29 U.S.C. § 794.

56. Defendants Mike Addington, Cyndi Addington, Matthew Itkowitz, John and/or Jane Doe Contract Air Charter and Jane Doe Flight Nurse discriminated against plaintiff solely on the basis of his disability by failing to provide appropriate supplies and conditions prior to and during the airlift to Arizona.

## THIRD CAUSE OF ACTION

### Violation of the United States Constitution

57. Defendants Mike Addington, Cyndi Addington, Matthew Itkowitz, John and/or Jane Doe Contract Air Charter, Jane Doe Flight Nurse, and Director of Institutions Leitoni Tupou were deliberately indifferent to Mr. Earl's serious medical needs prior to and during the airlift.

58. The above-named defendants were fully aware of Mr. Earl's serious medical condition and special needs but purposely denied him appropriate supplies and conditions for self-care or contingent medical assistance.

59. The deliberate indifference of the above-named defendants to Earl's serious medical needs on December 14, 2003 deprived him of his rights under the Fourteenth and Eighth Amendments to the United States Constitution.

**FOURTH CAUSE OF ACTION**

**Violation of the Alaska Constitution**

60. Defendants Mike Addington, Cyndi Addington, Matthew Itkowitz, John and/or Jane Doe Contract Air Charter, Jane Doe Flight Nurse and Director of Institutions Leitoni Tupou were deliberately indifferent to Mr. Earl's serious medical needs prior to and during the airlift.

61. The above-named defendants were fully aware of Mr. Earl's serious medical condition and special needs but purposely denied him appropriate supplies and conditions for self-care or contingent medical assistance.

62. The deliberate indifference of the above-named defendants to Earl's serious medical needs on December 14, 2003 deprived him of his rights under Article I, § 12 of the Alaska Constitution.

**FIFTH CAUSE OF ACTION**

**Violation of the Americans with Disabilities Act**

63. Plaintiff is a qualified individual with a disability as defined in the Americans with Disabilities Act. Mr. Earl has a physical impairment that substantially limits one or more major life activity. As a state prisoner, he meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provide by the Department of Corrections. 42 U.S.C. § 12102(2); 42 U.S.C. § 12131(2).

64. Defendants Florence Correctional Center John and/or Jane Doe S.O.R.T. member and Frank Luna discriminated against the physically disabled Mr. Earl by denying him appropriate supplies and conditions after arriving at the airstrip and correctional center in Florence, Arizona.

65. The defendants named above discriminated against Plaintiff on the basis of his disability in violation of 42 U.S.C. § 12132.

66. The defendants named above are agents or officials of public entities and/or public entities as that term is defined under 42 U.S.C. § 12131(1)(B).

**SIXTH CAUSE OF ACTION**

**Violation of the Rehabilitation Act**

67. Plaintiff is a qualified individual with a disability as defined in Section 504 of the Rehabilitation Act. Mr. Earl has a physical impairment that substantially limits one or more major life activity, including but not limited to providing self-care. As a state prisoner, Plaintiff

meets the essential requirements for the receipt of services or participation in programs or activities provided by Defendants.

68. Defendants Florence Correctional Center S.O.R.T. member and Frank Luna discriminated against Plaintiff solely on the basis of his disability by failing to provide appropriate supplies and conditions after arriving at the airstrip and correctional center in Florence, Arizona.

### SEVENTH CAUSE OF ACTION
### Violation of the United States Constitution

69. Defendants Florence Correctional Center S.O.R.T. member and Frank Luna were deliberately indifferent to Mr. Earl's serious medical needs after arriving at the airstrip and correctional center in Florence, Arizona on December 14, 2003. Defendants Timothy Lyden and Donald Brandon failed to correct the deprivations and violations.

70. The above-named defendants were fully aware of Mr. Earl's serious medical condition and his special needs but purposely denied him appropriate supplies and conditions for self-care or contingency medical assistance.

71. The deliberate indifference of the above-named defendants to Earl's serious medical needs on December 14, 2003 deprived him of his rights under the Fourteenth and Eighth Amendments to the United States Constitution.

### EIGHTH CAUSE OF ACTION
### Violation of the United States Constitution

72. Defendant Frank Luna denied Plaintiff his due process rights while Plaintiff was segregated immediately following the airlift from Alaska to Arizona. Defendants Timothy Lyden and Donald Brandon failed to correct the deprivations and violations.

73. The failure of the above-named defendants to provide Earl with due process deprived him of his rights under the Fourteenth and Eighth Amendments to the United States Constitution.

### NINTH CAUSE OF ACTION
### Violation of the Alaska Constitution

74. Defendants Florence Correctional Center S.O.R.T. member and Frank Luna were deliberately indifferent to Mr. Earl's serious medical needs after arriving at the airstrip and correctional center in Florence, Arizona on December 14, 2003. Defendants Timothy Lyden and Donald Brandon failed to correct the deprivations and violations.

75. The above-named defendants were fully aware of Mr. Earl's serious medical condition and his special needs but purposely denied him appropriate supplies and conditions for self-care or contingency medical assistance.

76. The deliberate indifference of the above-named defendants to Earl's serious medical needs on December 14, 2003 deprived him of his rights under Article I, § 12 of the Alaska Constitution.

## ~~TENTH~~ CAUSE OF ACTION
### Violation of the Alaska Constitution

77. Defendant Frank Luna denied Plaintiff his due process rights while Plaintiff was segregated immediately following the airlift from Alaska to Arizona. Defendants Timothy Lyden and Donald Brandon failed to correct the deprivations and violations.

78. The failure of the above-named defendants to provide Earl with due process deprived him of his rights under Article I, §3 and Article I, §7 of the Alaska Constitution

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that this court grant him the following relief:

1. Declare that the acts and omissions described in this complaint violated Earl's rights under the ADA, the Rehabilitation Act, and the U.S. and Alaska Constitutions.

2. Issue an injunctive order against the Director of Institutions, requiring new policies and procedures concerning the transfer of disabled prisoners and staying all future transfers of disabled prisoners until such policies and procedures are in place.

3. Enter judgment in favor of Earl for nominal, compensatory, and punitive damages, as allowed by law, against each defendant.

4. Order such other relief as this court may deem just and proper.

Respectfully submitted this __16th__ day of __May__ 2006.

By: _Jack Earl Jr._