# STATE OF ALASKA
## DEPARTMENT OF CORRECTIONS
### Commissioner's Office

FRANK H. MURKOWSKI, GOV.

431 N. Franklin St., Suite 400
Juneau, AK 99801
PHONE: (907) 465-4652
FAX: (907) 465-3390

February 24, 2004

Jack Earl
#302235
Florence Correctional Center
PO Box 6200
Florence, AZ 85232

Dear Mr. Earl,

Thank you for patiently awaiting a response regarding a possible resolution to your ADA complaint dated 1/10/04. Following our telephone meeting on 1/30/04, I requested and received additional time to conduct further inquiries and to prepare this response to the events on 12/14/03.

**Scope of the Complaint**
You reported in your letter and your subsequent phone call that your ADA complaint focuses around the following three events.

1. Incident outside the airplane
   - Humiliating conditions for evacuating colostomy bag contents
   - Insufficient amount of water for processing
   - Missing colostomy supplies

2. Incident in the airplane restroom
   - Missing colostomy supplies (not checked)
   - No use of a free hand
   - Inadequate space, water in the airplane restroom

3. Incident at airplane seat
   - Verbal abuse and insensitivity to your special needs
   - Release of confidential medical information
   - Physical bumping in order to provoke confrontation

**Relief requested**
1. Punitive damages in the amount of $100,000 for the abuses of the sky marshals.
2. Punitive damages in the amount of $100,000 for the abuses and ADA non-compliance of Florence Correctional Center and its staff.
3. Written reprimand for both agencies.
4. Retrofit all Air Marshal planes with one ADA, colostomy-friendly restroom.
5. Return my property and me to Spring Creek Correctional Center at DOC expense.
6. Have US Marshals modify transportation protocol to better accommodate inmates.

EXHIBIT E

printed on recycled paper

**Scope of the Response**

This response intends to resolve the ADA complaint according to the following guidelines. Thus it will be limited to addressing this agency's compliance with the Americans with Disabilities Act of 1990 as they relate to your complaint.

1. Participation. No individual shall be excluded from participation in or be denied the benefits of the services, programs, or activities of the agency by reason of a disability.

2. Discrimination. No individual with a disability will be subjected to discrimination by being denied aid, benefit, or service equal to that afforded others and in the most integrated setting possible.

3. Accessibility. Each of the agency's services, programs, and activities, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities.

I do not minimize the other concerns in your letter dated 1/10/04 about segregation placement and the use of an egg-crate mattress. However, as indicated in my letter to you dated 1/22/04, these concerns do not fall within the scope of this response and will not be addressed further.

**Incident Investigation**
- Medical Needs and Supplies
  1. The department brought in an extra nurse that morning to assist with disbursement of medications and for inmates with any special needs.
  2. The department verified that your colostomy supplies were placed in a clear "Ziploc" bag along with the other inmate medications for the flight.
  3. Each of the transported inmates were given the opportunity to use the restroom facilities at the institution prior to the 15 minute drive to the airport.
  4. Upon arrival at the airport, the US Marshals were briefed on the tarmac regarding the transfer. Several minutes were also spent discussing all prisoner medical issues with the flight nurse.
  5. Statements obtained verify that the medical supplies were loaded onto the airplane.
  6. The flight nurse informed the lead marshal that you and the inmate with the catheter would be given priority access to one of the restrooms.
  7. The flight nurse introduced herself to you and addressed air pressure considerations.
  8. Prior to boarding the plane, all inmates including yourself needing to relieve themselves were given the opportunity to do so outside the airplane.
  9. The flight nurse confirmed giving you two 8-ounce containers of water for your evacuation needs outside the airplane.
  10. You stated that the marshal from New York failed to look for your supplies when asked and was told to "deal with it". In contrast, it was reported that the flight marshals are all instructed to contact the flight nurse for medical needs.
  11. You indicated that there was no water in the airplane restroom. Neither the lead marshal nor the flight nurse could confirm or deny this statement.
  12. Joint Prisoner-Alien Transportation System (JPATS) staff has procedures that include contacting the flight nurse to assist and assess all medical needs in flight.
  13. JPATS staff, which transports thousands of inmates each year, reported never having any problem with an inmate with a colostomy.
  14. The flight nurse reported that she has been involved in the transportation of between 300 and 400 colostomy prisoners who have traveled without any problems.

- Verbal Interaction and Abuse
  1. You stated that you were going down to Arizona with a positive attitude and even joking with the correctional officers you knew at the Anchorage facility. The flight nurse also indicated that initially you were very pleasant when she briefed you outside the airplane.

2

2. You claimed that the lead marshal was very verbally abusive to you after you left Seattle and used the restroom.
3. However, it was reported that before using the restroom this time, you were verbally abusive with the crew and the flight nurse.
4. Records also show that your were agitated and verbally abusive from the onset of the transportation process.
5. When the prisoner transportation staff arrived at the Anchorage facility around 2:40am on 12/14/03, they were briefed with details about the transportation and the individual demonstrations of yourself and others around the time of "roll-up".
6. It was reported that you were verbally abusive to staff again when restraints were initially applied.
7. Although you also alleged that the lead marshal disclosed to others near your seat that you have a colostomy, he reported that you were the first stated "You don't know what it's like to have a colostomy".
8. The lead marshal reported that he did not intentionally bump you at any time as he made his rounds in the center aisle.

- Enhanced Access
    1. The department assured you that you would be given enhanced access to the plane's restroom facilities in order to take care of your colostomy needs.
    2. You indicated that enhanced access would include having at least one of your hands free.
    3. Departmental policy on "Use of restraints in transport" states that
        - Prisoners transported by an armed PTO must be in restraints regardless of custody level.
        - Both restraints will not be removed unless there is an emergency and two officers are present, one of whom must be armed.
    4. The lead marshal indicated that although he does not do so, his staff will sometimes take off one of the handcuffs for inmates.

- Privacy, Dignity
    1. You stated that you were humiliated about having to evacuate your colostomy bag outside like a dog.
    2. Each of the inmates who needed to relieve themselves prior to boarding the plane similarly did so outside behind the snow bank.
    3. Department policies on other issues of privacy.
        - Searches of Prisoners and Institutional Areas policy states "all strip searches of a prisoner must be conducted by an officer of the same sex as the prisoner being searched, in a manner least offensive to the prisoner's dignity and in private, where possible. Under exigent circumstances, when an officer of the opposite sex conducts a strip search, a second officer must be present and the search conducted with the same regard for dignity and privacy.
        - Urinalysis testing policy states "a staff member shall ensure that the prisoner submits an unadulterated urine specimen in the specimen bottle...by witnessing the prisoner urinate in the bottle".
    4. It was reported that two DOC officers escorted you behind the snow bank out of sight of other prisoners for you to take care of your needs.

- Colostomy Friendly Restroom
    1. You stated that the airplane should be retrofitted with one ADA acceptable, colostomy friendly restroom.
    2. Newer aircraft with more than one aisle in which lavatories are provided shall include at least one accessible lavatory (Title 14 CFR, Part 382.21).

3

3. The Department of Transportation issued this rule defining the rights of passengers and the obligations of air carriers under the Air Carrier Access Act. The rule applies to all U.S. air carriers providing commercial air transportation. Provisions that concern the direct provision of air transportation services do not cover "Indirect" air carriers (e.g. charter operators).

## Conclusion

- Findings
  1. Since your complaint addresses having to participate in the activities of the agency rather than being excluded from the benefits or participation in its services, programs, or activities, I do not find that the ADA policy on participation is relevant to this complaint.
  2. I cannot explain the reported changes in your demeanor on 12/14/03. Reports of your periodic outbursts from roll up through the entire transportation process contradict your statement of finally losing your resolve with the lead marshal after he initiated a confrontation at your seat. The evidence regarding the interaction at your seat is so conflicting that its merits cannot be substantiated. I cannot find according to ADA law that you were verbally discriminated against based upon your disability during this interaction.
  3. I find that although JPATS policy allowed for the free use of one hand in the rest room, this option was not considered in light of your circumstances on 12/14/03. However, reports of hundreds of colostomy prisoners transported without incident indicate that your situation on 12/14/03 is not indicative of the way JPATS procedures are followed. Furthermore, I do not find that your report of these incidents is representative of the class of individuals with like disabilities or that you speak for the class. I do not find that your problems reflect a systemic issue requiring a modification to existing procedures.
  4. I certainly understand the humiliating loss of privacy and dignity which you faced. However, losses of liberty and privacy are some of the unavoidable consequences to incarceration and the conditions of confinement. In light of the exigent circumstances on 12/14/03 I find that the department acted according to policy to preserve your privacy and dignity while addressing your needs outside of the airplane. I find that your treatment was representative of you as a member of the class of inmates and not based upon you as a person with a disability.
  5. Although I could not verify water accessibility during this particular flight, I understand its availability is not normally an issue and consequently not a systemic problem. Thus, no procedural remedy is sought.
  6. The accessibility of medical supplies, as previously addressed, has been couched in questionable interaction where more effective communication between parties may have remedied the situation during the flight. However, your circumstances, when considered alongside the successful transportation of hundreds of medical care inmates, do not indicate that systemic procedures or service provisions when viewed in their entirety according to ADA policy need to be modified.
  7. I suspect that false expectations resulted from a misinterpretation of the phrase "enhanced access to restroom facilities" used in the 10/16/03 response to your classification appeal. I find that DOC personnel interpreted it to mean priority access to the restroom where you perceived it to mean free use of at least one hand in the restroom.

- Relief

  The department is unable to come to a resolution with you on any of the points of relief sought.
  1. Punitive relief is not within the scope of this complaint resolution and was not considered.
  2. Grounds were not established meriting a written reprimand of the US Marshal Service or the JPATS program.

3. The ADA compliance of the Florence Correctional Center, as reported to you in my letter of 1/22/04, was not within the scope of this review. The requested reprimand of that agency is inapplicable.
4. Although there are benefits of retrofitting the airplane, it is not an enforceable request under ADA or the Air Carrier Access Act.
5. Your designation for the Florence Correctional Center placement is a classification issue with its own administrative remedy and outside the scope of this review.
6. JPATS procedures were not found to be systemically flawed requiring modification.

I am disheartened that we cannot reach a resolution to your complaint. You may request a review of the complaint by the state ADA coordinator. You must request this review within 10 days of the time you received this notification.

Sincerely,

*Timothy F. Lyden*

Timothy F. Lyden
DOC Prisoner ADA Coordinator

cc:   Marc S. Antrim, Commissioner
      Mike Addington, Director of Institutions
      Matt Itkowitz, US Marshal Service (JPATS)
      Cyndi Addington, Prisoner Transportation Coordinator
      Don Brandon, State ADA Coordinator
      John K. Bodick, Assistant Attorney General
      Edie Zukauskas, Disability Law Center
      file

Enclosures