**IN RESPONSE TO:** EXHIBIT D Statement and Incident Report submitted by Sgt. Cyndi Addington.

In my opening I stated that this person perjured herself in an "offical investigation" which contrary to law and punishable under AS 11.56.200, and a Class B Felony. I will expose the prejured statements as I review and examine the beforementioned statement and incident report, both dated 12/14/03.

I assert that her statement appears to be based on hearsay and as such can only be admissible if it is reliable, and other supporting and actual evidence is presented, as denoted in Evidence Rule 801-803.

[promised by who on what?] It is also noteworthy to mention that her statement is also an attempt to persuade findings in favor of the violators using credibility, but it does not change the fact that it is still irrelevant to the issues, of whether or not I was afforded promised ADA accommodations, colostomy supplies, water and modifications necessary to avoid discrimination based on my disability, to enjoy a service, program or activity during the flight innquestion.

[? cyndi addington] However, I have a sense that maybe some countering is necessary and thus would state that when she stated that the "marshal service was very accommodating to my needs for continual restroom service' I have to wonder is she talking about me? I only used the restroom twice aboard the flight, making this statement incredidle, since no "continual" need to access restroom was necessary.

Additionally the priority professed given was not in fact given, when I asked to use the restroom I was told "you have to wait your turn."

Her second perjured statement comes when she states that "inmate Earl detached his colostomy bag and poured the contents of the bag all over the bathroom. He <u>smeared feces on the walls, sink, toilet, floor, etc.</u>" These prejudicial statements fail because (a) it was established that I did not receive my colostomy supplies (e.g. [validate] pouches)and for the record I have used a one-piece drainable pouch for well over 6 years. This style of pouch cannt be detached, as if I was using a flange device, this style adheres directly to the stomach skin using extremely strong wax ring surrounded by extremely stick cloth like anchoring system. You cannot merely "detach" as was stated by this woman, because if you do you cannot re-attach it to the skin because it is a one-way process. (SEE CovaTec pouch #_22759_).

(b) in her statement she said that I poured the contents, smeared feces all over the place (paraphrased) however her incident report states something different, she stated that "While in the restroom he took off his colostomy bag and FLUNG feces all over the walls, floor, sink, mirror, etc. These statements are inconsistent and due to her not having personal knowledges of what had actually taken place. Thus her statement must be disrgearded, if not for these reasons for the irrelevance.
(c) there is no physical evidence to support this statement (e.g. photo, evidence of smeared feces on my clothing, hands, handcuffs, nor any witnesses,) but I do have numerous inmate eye witnesses declarations whom will support that these horrific allegations in fact did not take place. This statement meant to discredit me and my defense of self through her presumbed authoritive credibility.

11

IN RESPONSE TO: EXHIBIT E Statement of Matthew Itkowitz U.S. Marshal (LABO) lead on the flight in question.

In my openeing I stated that he too gave perjured statement in an "official investigation" which is contrary to law and punishable under AS 11.56.200 and is a Class B Felony. I will expose the perjured statements as I review and examine the beforementioned statement.

His perjury begins with his apparent ability to sense state of mind of other persons, and claims that "Earl was one of inmates who were not happy about being moved." This is not only ridiculous but irrelevant to the issues concerning ADA.

The perjury continues with his claims that he told "inmate Earl" by him and the flight nurse, "that any time I needed to use the restroom, to inform him the flight nurse or a crew member, and "he would be accommodated" meaning me! This is factually devoid of merit because I never spoke with him until after the accident in the restroom my last visit (2nd time), and the flight nurse was never asked, and when I asked crew members I was told to "wait your turn", so the acting, by wording, that I would be "accommodated" is erroneous, and not supported by facts. I can however support that I was not allowed to just go to the bathroom by declarations of other inmate passengers.

The perjury continues when he states that "Earl made a couple of trips to the restroom before landing in Seattle." This too is devoid of factual merit since I only used the restroom twice total from Anchorage to Arizona (Mesa), and apparently this is where Mr. Lyden gets the "Seattle" point from in his findings at page 3.

The perjury continues when he states (an of which is hearsay since he was not actually present) that "He went aft to use the facility, where this time he emptied his colostomy bag all over the walls and the bathroom floor. There was fecal matter all over the place." Even if this were a true statement he does not mention anything about "fliging, pouring, nor smearing, as did another hearsay witness.

This too is irrelevant, but does support that I had difficulty in self-care and should have been accommodated with supplies, and modifications of their practices and had one hand free. The accident was purely accidental, and I was embarassed and horrified by what happened, and attempted to explain to Itkowitz, only to be verbally berrated and attacked. I told the marshal at the restroom door which he stood in during my attempts at self-care, that I was "sorry".

[handwritten margin note: what marshall professionalism]

He continues to perjure himself when he stated that I told him "fuck you" when he asked me why I did that, which I never did to him or any member of his crew. What he purposely fails to metion is that he did not ask me anything he stated "you did that on purpose, you piece of shit, I know you did, when I tried to explain what happened and how sorry I was, if only I had had my supplies and one hand free I'm sure this would never have happened.

I attempted to mention ADA which he stated "what's that?" and became

12

more enraged, as I continued to defend myself against his verbal attacks.

He further perjured himself when he states that he "never touched" me nor "bump into" me purposely, that if he did it was not intentional.

When this person believed that I had purposely done the accidental spill in the restroom he became very aggressive and verbal, and physical with me. He attempts to say that "if any of us rubbed against him it was not done intentionally," what is interesting is that I have never mentioned anyother crew members in this situation, only him, because only he acted out. I can support his culpability and cognitive awareness that he knew exactly what he was doing through declarations of numerous inmate passengers that witnessed this innappropriate transaction, and what he'd hope would turn into a physical confrontation with me as a result.

He attempted to provoke me into a situation that he could remedy with violence, and thus claim that an inmate needed to be dealt with using force, so he could hurt me. This did not happen because I made no attempts to engage him.

In all his statement is hearsay, inadmissible and irrelevant to the issues and should be disregarded as another attempt to persuade in favor of the violators using presumed credibility.

In Conclusion: This situation was extremely traumatic and was not suppose to go down the way it did, at not fault of mine. I did not purposely act like an animal, as claimed, but merely had an honest to GOD accident. These statements, as a majority of Mr. Lyden's findings are irrelevant, and a determination shuold be made in favor of actual provable facts, relevant to whether or not I was discriminated against because of my disability, whether or not modifications should have been made to avoid what occurred, whether or not I was denied established accommodations, (e.g. supplies, water, proper toileting facility, and privacy) and in so doing find that the Alaska DOC, and it's agents, the U.S. Marshal and it's agents and the aircraft itself (see Contractor) all individually and/or collectively violated my rights under the law.

**Additional Requested Reliefs:** 7. ADA training for all parties in violations, and their agents.
8. felony perjury charges on Cyndi Addington and Matthew Itkowitz. 9. Punitive damages in the amount of $100,000 for failure to act and improper communications, resulting in personal damages by Alaska DOC and it's agents, and U.S. Marshals and it's agents.
10. Exemplary damages for the purjured statements in the amount of $50,000 each person, and 11. any other reliefs the court deems appropriate, and injunctive relief ordering ADA compliances.

13

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that s/he freely presents the declaration and that it contains information that is true and correct.

On December 14th, 2003 unfortunately I was transferred from Anchorage Complex to Anchorage International Airport to be transported to Florence Correctional Center in Florence, Arizona.

On the 3rd bathroom run I had seen Jack Earl escorted to a seat 4 rows in front of me on the right side of the aisle, which I was on the left side aisle seat.

I had seen the Air Marshal I believe was in charge walk up the aisle and bump into Jack Earl with his arm and hip.

I do not know this man's name but he had a tattoo of a cobra snake on the inside of his left arm and he wore a black shirt and light tan pants.

Why he bumped into Jack Earl I do not know, but he did and I saw it, and I know an intentional bump when I see it.

DATED this 6th day of March, 2004.

BY: _Matt Mayac_
Matt Mayac
# 087990
CCA/FCC
P.O. BOX 6200
Florence, AZ    85232

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that s/he freely presents the declaration and that it contains information that is true and correct.

On 12/14/03 I was enroute to the contract detention center in Florence Arizona, operated by Corrections Corporation of America (herein after CCA) and was being transported from Anchorage Jail (herein after AJ).

At AJ and approximately 0200hr of the 14th of December we were all (120 Alaska inmates) strip-searched, with the taking of certain personal items, without proper reports being made (personally i lost a shirt and pair of socks), all at the orders of the U.S. Marshals. When I asked for a proper seizure report I was informed "it ain'y gonna' happen, so shut up and get in the van."

I asked a female sergeant and she told me it "was trash anyway, now shut up and move along, you're not getting any stupid seizure report." That female sergeant stayed as escort with us the entire trip, in the vans and aboard the flight.

When we arrived at the airfield we were made to wait well over 30 minutes in the vans, while the plane was fueled up, deiced and the personal property boxes and files boxes were hand loaded into the tail belly section of the plane, which appeared to be a MD80. I was in the 11th van load, and one of the last to be pat-searched and placed in the airplane. This whole process took well over an hour, and at no time were any of the inmates offered, nor allowed a restroom break, or a chance to relieve themselves, and once we exited the vans it was so cold we were hurried down a guantlet of U.S. Marshals and Alaska Corrections personnel, and directly into the plane.

I was placed on the left side, last row, in the aisle seat until the first restroom break, at which time I was placed in the second to the last row of seats on the right side of the plance, for the remainder of the trip to Mesa, Arizona.

I personally observed a tall agent inform the female sergeant that "the guy with the colostomy needs to use the can" at which time I seen her trade places with that agent, and head directly to where Jack Earl sat. She got him up, pointed him in the direction of the restroom, which was behind the last row of seats, and down the aisle he walked. I then heard Jack Earl ask if he could have a hand free wherein the agent there said "no, just deal with it" then Jack Earl asked where his supplies were, that he needed them , and they were suppose to be available to him during the flight.

To this the agent there stated "shut the fuck up and hurry up, there are others waiting to use this."