IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JACK L. EARL, JR.,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>MIKE ADDINGTON, et al.,<br><br>　　　　Defendants. | Case No. 3:06-cv-00126-TMB<br><br>ORDER DENYING<br>MOTIONS TO DISMISS |

　　　　On May 30, 2006, Jack L. Earl, Jr., a self-represented state prisoner, filed a civil complaint under Title II of the Americans with Disabilities Act,[1] Section 504 of

---

[1] The American's with Disabilities Act covers inmates. *See Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206 (1998); *Frost v. Agnos*, 152 F.3d 1124 (1998). When disabled prisoners and parolees are injured by the failure of defendants to comply with the ADA's requirements, they may bring suit in federal court. *See Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) (class action). Mr. Earl has made allegations of the denial of accommodation, by denying him appropriate supplies and conditions for self-care during his transfer to Arizona, in his complaint. *See Armstrong*, 275 F.3d at 864 - 65 ("The Board's practice, consistent with its policies, permits Board and Department employees to deny appropriate accommodations requested by disabled prisoners and parolees, and instead to rely on a narrow and unsatisfactory range of alternatives. ... Such treatment not only results in offense and frustration; it appears to have resulted in significant periods of unwarranted incarceration for a

the Rehabilitation Act,[2] or in the alternative,[3] 42 U.S.C. § 1983.[4]  Two of the defendants, who were employed by the State of Alaska at the time of the alleged violations, have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), on the grounds that Mr. Earl "failed to state a claim upon which relief can be granted because he did not file within the statute of limitations."[5]

---

number of disabled parolees. ... [W]e need not find a constitutional violation to establish actual injury under the ADA and the Rehabilitation Act.").

[2] *See Douglas v. California Dept. Youth Authority*, 271 F.3d 812, 819 (9th Cir. 2001) (a state that receives Rehabilitation Act funds waives its sovereign immunity from claims made under that Act).

[3] The Ninth Circuit has decided to "join the Fifth, Eighth, and Eleventh Circuits and hold that a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act." *Vinson v. Thomas*, 288 F.3d 1145, 1155, 1156 (9th Cir. 2002), *cert. denied*, 537 U.S. 1104, 1156 (2003).

[4] Under section 1983, and the Eighth and Fourteenth Amendments to the Constitution, if Mr. Earl was deprived of the "minimal civilized measure of life's necessities," a prison official could be held liable, if the official "acted with **deliberate indifference** to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1999), citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (emphasis added).  An "official's conduct must have been 'wanton,' which turns not on its effect on the prisoner, but on the constraints facing the official." *Id.*, citing *Wilson*, 501 U.S. at 302-03. The "definition of cruel and unusual punishment is subject to 'the evolving standards of decency the mark the progress of a maturing society.'" *Frost v. Agnos*, 152 F.3d at 1129, quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Under this analysis, Mr. Earl may have stated a claim for relief against defendants Matthew Itkowitz, Director Mike Addington, the U.S. Marshal "Doe", and the Florence Correctional Center SORT team members, in their individual capacities,

[5] Docket Nos. 28, 38, & 54 at 1.

Limitations Period

Defendants Mike Addington and Cyndi Addington moved to dismiss during the initial screening stage of the Court's review, on the basis that the two-year statute of limitations period had run.[6] The statute of limitations must be plead as an affirmative defense, however, so the defendants' motion that the action be dismissed during initial screening, before a response from the parties, must be denied.[7]

Nonetheless, because the defendants filed further motions to dismiss as well,[8] Mr. Earl has responded to the motions,[9] and the defendants have replied,[10] the issue is now ripe.  In their motions to dismiss, the defendants argue that the statute of limitations ran in December, 2005, two years after the transfer during which the

---

[6] *See* Docket No. 28 at 1-2 ("The State asks that this complaint be dismissed through the pre-service screening process," citing 28 U.S.C. § 1915A).

[7] *See, e.g., Cedars-Sinai Medical Center v. Shalala*, 177 F.3d 1126, 1128-29 (9th Cir. 1999); *see also State of Nevada Employees' Ass'n, Inc. v. Keating*, 903 F.2d 1223 (9th Cir.), *cert. denied*, 498 U.S. 999 (1990) (the trial court erred in raising an affirmative defense without giving the parties an opportunity to resist or discuss the defense); *Abbas v. Dixon*, ___ F.3d ___ *3 (9th Cir. Feb. 28, 2007) ("The pleading requirements in the Federal Rules of Civil Procedure, however, do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses."), citing *Jones v. Bock*, 127 U.S. 910, 920 (2007).

[8] See Docket Nos. 38, 54.

[9] *See* Docket Nos. 39, 49, 55.

[10] *See* Docket Nos. 41-44.

alleged incidents occurred.[11] In his opposition, Mr. Earl contends that, because he is required to exhaust his administrative remedies,[12] during which time he cannot bring suit in federal court,[13] the limitations period is tolled; and because the administrative decision was final in July, 2004, Mr. Earl's complaint, filed in May, 2004, was timely.[14]

It is clear, and the defendants do not dispute, that the limitations period is two years.[15] The defendants also agree that Mr. "Earl correctly states that the statute of limitations for prisoner claims are tolled while administrative remedies are being

---

[11] *See* Docket Nos. 38 & 54 at 2-3.

[12] *See Porter v. Nussle*, 534 U.S. 516, 520 (2002) (The "exhaustion requirement applies to all prisoners seeking redress for prison conditions or occurrences.").

[13] *See Johnson v. California*, 543 U.S. 499, 528 n. 1 (2005) (exhaustion must occur before bringing suit in federal court).

[14] *See* Docket No. 39 at 3-4.

[15] *See* Docket Nos. 38 & 54 at 2-3; *see also Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999) ("Section 1983 does not contain a statute of limitations. Rather, federal courts apply the forum state's personal injury statute of limitations for section 1983 claims.") (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985), and *Elliott v. Union Bay*, 25 F.3d 800, 802 (9th Cir. 1994)); *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 n. 2 (9th Cir. 2002) ("Because the ADA does not contain a statute of limitations, the court must apply the statute of limitations of the most analogous state law. ... Most district courts have applied [the limitations period] for personal injury actions to federal disability discrimination claims."); *Douglas v. California Dept. Of Youth Authority*, 271 F.3d 812, 823 n. 11 (9th Cir. 2001) ("The statute of limitations for the Rehabilitation Act ... claim is provided by the analogous state law. In this case, both parties agree that California's .... statute of limitations for personal injuries governs."); AS 09.10.070 (Alaska's 2-year statute of limitations for personal injury actions).

pursued."[16] In their replies, however, the defendants raise a new ground for dismissal, claiming that Mr. Earl did not fully exhaust his administrative remedies. The defendants now argue that, because Mr. Earl did not properly exhaust his administrative remedies as against these defendants, the statute of limitations could not have been tolled.[17]

The United States Supreme Court recently held, in *Jones v. Bock*, that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."[18] Because the defendants first raised the issue of exhaustion in their replies to Mr. Earl's opposition to their motions to dismiss, the Court cannot grant the initial motions based upon the later-raised issue of exhaustion.

However, even if the merits of the exhaustion issue were reached, the defendants would not prevail. The defendants claim that Mr. "Earl did not exhaust administrative remedies regarding his civil rights claim because he only complained of violations of the Americans with Disabilities Act (ADA ). Earl did not properly exhaust his remedies regarding his ADA claims because his ADA complaint was exclusively directed at the federal marshals, and made no mention of defendants

---

[16] Docket Nos. 41 & 43 at 1-2;

[17] *See id.* at 2.

[18] *Jones v. Bock*, 127 S.Ct. 910, 921 (2007) (quoting *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993)).

Mike Addington or Cyndi Addington."[19] To the contrary, however, the Supreme court also recently held in *Jones v. Bock* that nothing in the PLRA "imposes a 'name all the defendants' requirement."[20]

So even if the Court reaches the exhaustion issue, the fact that Mike and Cyndi Addington were not specifically named in the grievances (ADA or otherwise) does not mean that Mr. Earl failed to exhaust. In fact, Mr. Earl alleged in his complaint that Ms. Addington was "responsible for managing [his] transfer ... including the special needs of the prisoners being transferred and briefing other individuals involved in the transfer," and that Mr. Addington was "responsible for the ... preparation and transport of prisoners from one facility to another."[21] In his initial grievance, Mr. Earl states that when he was on the tarmac, the flight nurse was uninformed about his supplies, for which the Addingtons, he alleged in his complaint, were responsible; and that his colostomy supplies, for which they were also allegedly responsible, were not on the plane, nor did anyone know what he was talking about.[22] His grievance certainly states that preparations for his transfer, given his handicap, were not made. He only fails to specify in his grievance the names of the

---

[19] Docket Nos. 41 & 43 at 2.

[20] *Id.* at 1246 (citation omitted); *see also Williams v. Beard*, ___ F.3d ___, 2007 WL 973953 *3 (3rd Cir. April 3, 2007) ("[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Jones,* 127 S.Ct. at 923.").

[21] Docket No. 1 at 2.

[22] *See* Docket No. 42, Exhibit C.

individuals responsible for those preparations (and it is unclear whether had this information at the time), or ask for specific relief from those individuals.[23]

The defendants acknowledge [24] that Supreme Court points out the reason for the exhaustion requirement is so that the prison officials have a chance to address, and perhaps resolve, a dispute before the issue is taken to court.[25] The Supreme Court has explained as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. ... In other instances, the internal review might "filter out some frivolous claims." ... And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.[26]

Mr. Earl filed a grievance, explaining his complaints, titled "ADA & Other Abuses During Transfer from Arizona."[27] He included allegations about his treatment from

---

[23] *See Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001) ("an inmate must exhaust **irrespective of the forms of relief sought** and offered through administrative avenues.") (emphasis added); *see also Spruill v. Gillis*, 372 F.3d 218 (3rd Cir. 2004) (prisoner did not fail to exhaust his administrative remedies, under the PLRA, with respect to his claim for money damages, by failing to include request for money damages in his prison grievances).

[24] *See* Docket Nos. 41 & 43 at 3-4.

[25] See *Woodford v. Ngo*, 126 S.Ct. 2378, 2384 (2006).

[26] *Porter v. Nussle*, 537 U.S. at 524-25.

[27] Docket No. 42, Exhibit C.

the time he arrived on the airport tarmac in Alaska up to and including treatment received at the facility in Arizona. Mr. Earl received a response from Timothy Lyden, the DOC Prisoner ADA Coordinator, stating that, "in reference to your air transfer incidents, I will process your statements as an ADA complaint."[28] How Mr. Earl's grievance was classified, or whether he knew and gave the names of the individuals responsible for transfer preparations, should not be used to contravene the purpose of the exhaustion rule – that is, to allow for a chance for the complaint to be addressed and possibility resolved administratively, before court action.

Therefore, IT IS HEREBY ORDERED:

Defendants Mike Addington and Cyndi Addington's motions to dismiss, at docket numbers 28, 38 and 54, are DENIED.

DATED this 23rd day of April, 2007, at Anchorage, Alaska.

/s/TIMOTHY M. BURGESS
United States District Judge

---

[28] Docket No. 42, Exhibit D; Mr. Lyden also confirms that Mr. Earl complained about inadequate preparations in Exhibit E, noting the allegations of inadequate water and missing colostomy supplies, and a copy was sent to both Mike and Cyndi Addington.