Jack L. Earl, Jr. / Pro Se
#302235
Red Rock Correctional Center
1752 East Arica Road
Eloy, AZ                85231



RECEIVED
JUL 0 9 2007
CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JACK L. EARL, ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 3:06-CV-00126-TMB |
| MIKE ADDINGTON, et al., ) | PLAINTIFF'S OPPOSITION TO DEFENDANT MATTHEW ITKOWITZ'S MOTION TO DISMISS |
| Defendants. ) | |

Plaintiff, Jack L. Earl, Jr., appearing without the benefit of counsel, pro se, having received the defendant's motion to dismiss on May 18, 2007 does hereby oppose and asks that Defendant Matthew Itkowit's Motion To Dismiss be denied.

### Introduction:

Defendant Matthew Itkowitz, through Assistant U.S. Attorney, Richard L. Pomeroy submitted unjustifiably late limited entry of appearance and extension of time on shortened time to file answer, and utlimately moved the Court to dimiss all claims asserted by Plaintiff against Defendant Itkowitz, pursuant to Fed.R.Civ. P. 12(b)(1) and (6). In the "Background" section of Defendant Itkowitz's motion he sets the tone he hopes the Court will adopt, that being Plaintiff "is serving an eighty-five year sentence for first degree murder" and in stating this irrelevant material is suggesting the Plaintiff should not be given the same considerations regarding laws protecting qualified individuals with disablities.

-1-

In Defendant Itkowitz's motion to dismiss he cites "lack of jurisdiction over the subject matter, failure to state a claim upon which relief can be granted, inadequate service of process, and the complaint of plaintiff was not brought within the two year statute of limitations."

**Factual Background:**

Plaintiff was one of 120 Alaska inmates that were airlifted from Alaska to Arizona by the Alaska Department of Corrections, to be held under contract with Corrections Corporation of America Inc., at their Florence facility. The Plaintiff, as previously stated, is a qualified individual with a disability, and as such accommodations for the long flight had been instigated and assured by the Alaska Department of Corrections for use before and during the flight. Also as previously stated the Plaintiff was told by one of the "officials" on the tarmac, that because of the pressure in the cabin when ascending his "bag" should be emptied. Plaintiff agreed and was escorted to where Plaintiff thought a toileting facility would be located, but instead, while fully restrained (e.g. leg-irons, bellychains and handcuffed to those bellychains) and under the direct supervision of then Director of Institutions was escorted by four "officials" behind a snowpile, in subzero weather, to kneel down in the snow and empty his appliance.

Of course the unbelievable and schocking episode elicited complaints from the Plaintiff, whom was placed on the plane. Plaintiff while at Anchorage Jail, having already been assured by Deputy Commissioner that they were well aware of his needs, (in plaintiff's classification appeal against transfer to out-of-state facility) that the necessary colostomy supplies had been specially packaged and marked by R.N. Suzan Del Rosso (see Exhibit A)

-2-

Plaintiff attempted several times to present his need for the accommodations that had been "promised" him during the flight, to at least three of the "officials" when he had a chance, but none of them had heard of the "Americans with Disabilities Act," or "A.D.A." These needs spoke of had allegedly been made know to all "officials" on the flight, in a discussion on the tarmac before the flight took place, by Sgt. Cyndi Addington. (see Exhibit B)(edited for proof of matter asserted)

It is true that Plaintiff requested to use the restroom twice during the flight, with the first time rendering no actual contents to be evacuated. However, this was when the Plaintiff asked for his A.D.A. accommodations (supplies) and that "official" stated **"shut the fuck up and hurry up,"** for no apparent reason to the Plaintiff, whom then asked why the "official" was "mad at him," which rendered **"I don't know nothing about no supplies, and other people need to use the restroom too."** Plaintiff then requested that he'd need his supplies, water and at least one hand free to do adequate self-care, which rendered **" no, deal with it,"** from this "official." In a later investigation by State of Alaska A.D.A. Coordinator, he asked Defendant Itkowitz, "Are there every any occasions you or your fellow Marshals have allowed **one hand free** to take care of personal hygiene or other health related need?," (see Exhibit C at #5) which was responded to by Defendant Itkowitz as **"Yes if needed."** (see Exhibit D at #5) Yet, and eventhough the Plaintiff was not considered **"black-box"** worthy he was arbitrarily denied.

Approximately 3 hours later the Plaintiff asked to use the restroom and was told to **"wait your turn,"** eventhough he was to have enhanced access. (see Exhibit E)

-3-

When finally Plaintiff was escorted back to the restroom, there was a small amount of waste matter in the pouch, and again the request for accommodations were denied. Plaintiff attempted to do his best, given the the arbitrary circumstances, to do self-care, only to accidentally mishandle the pouch resulting in some of the small amount of waste matter falling directly down onto the toilet, with a little bit falling onto the Plaintiff's clothing. It should be noted that the Plaintiff must kneel in front of a toilet to have ready access to the toilet when evacuating **or** changing the colostomy pouch. Additionally, the Plaintiff at no time during the flight "changed" the pouch.

Because of this unfortunate event Defendant Itkowitz took it upon himself to threaten and harass the Plaintiff for the remainder of the flight, doing so by continuously assaulting him every time he passed the Plaintiff (whom Itkowitz had had re-seated in an isle seat) with added verbal abuses and personal attacks, divulging confidential medical information and causing unnecessary humiliation. This was witnessed by other Alaska prisoners. (see Exhibits F,G & H)[note: Exhibits F G & H are from several Declarations taken regarding the prisoner transport-airlift of December 14, 2000.]

Plaintiff wishes to correct Defendant Itkowitz's footnote assertion [at 4] in his Motion to Dismiss. Plaintiff is suing Defendant Michael Addington in his individual capacity for monetary judgment this is because he was the Director of Institutions and is now employed by Corrections Corporation of America Inc., and it is D.O.I. Leitoni Tupou whom is being sued in an official capcity for injunctive relief.

Upon landing in Arizona (airport unknown) the Plaintiff witnessed Defendant Itkowitz talking with some men dressed in black riot gear, on the tarmac, pointing up towards where the Plaintiff was. Upon exiting the plane two of the men in black roughly took the Plaintiff towards a small white van. The Plaintiff was asking what was going on, only to be told **"don't look at us, shut up,"** as the Plaintiff was slammed face first into the side of the van, which caused injury.

The Plaintiff again asked why he was being mistreated and the tallest of the two men dressed in black stated **"we were told about you, shut up!"** then the Plaintiff was placed into a small area right behind the drivers seat by himself. Six other Alaskan prisoner whom were transported with "black-boxes" were placed in the back of the same van. Whatever Defendant Itkowitz told the men in black riot gear followed the Plaintiff. In fact the Plaintiff was left in the van (after the others were removed) for approximately three hours, eventhough he had told the tallest of the men in black that his colostomy pouch was full and he needed very much to use a restroom.

At the end of the Plaintiff's stay in the van four men dressed in black escorted him, with the same tall man that had slammed him into the van earlier, leading, to the segregation unit. Here the Plaintiff was placed, fully retrained, into a three X three, caged, shower stall. Here the Plaintiff stood for approximately one hour. Then he was told to strip and throw his clothes out, which he did, and he stood in the shower naked, for approximately one more hour. He even urinated down the drain while there, and his requests (even after showing officers)to evacuate the contents of his "pouch," fell on deaf ears. Apparently some sort of shift change occurred, and Officer Felix came over to the shower stall, asked Plaintiff his clothing sizes. The Plaintiff explained his urgent need for a restroom, and Officer Felix and another officer (after Plaintif got dressed) escorted him (after re-restraining him) to an upstairs cell, where he was placed with another Alaska inmate, Kevin Frank. Plaintiff explained his A.D.A. accommodation to be housed singly, but these officers were not in any position to fulfill the A.D.A. accommodation, or grant the request at that time.

**Discussion:**

Defendant has moved to dimiss Plaintiff's causes of action against him, and has choosen to utilize the Federal Rules of Civil Procedure, Rule 12(b)(1) claiming lack of subject matter jurisdiction; (b)(5) claiming insufficient service of process; and (b)(6) claiming that Plaintiff failed to state a claim upon which relief can be granted. The relevant part of Fed.R.Civ.P. 12 states:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19.
> Motions making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to an not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In reviewing the complaint, all factual allegations "are taken as true and contrued in light most favorable to [p]laintiff;" **Epstein v. Washington Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996)** Dismissal is improper where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law;" **Fed.R.Civ.P. 56(c)** and the defense requires factual review; **Young v Selsky, 41 F.3d 47, 54 (2nd Cir. 1994)**, with only genuine disputes over material facts; **Anderson v Liberty Lobby Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).**

**Arguments:**

Regarding Defendant's allegation concerning "inadequate service of process," See **Fed.R.Civ.P. 12(b)(5)** this is a moot issue since Plaintiff has served both the Assistant U.S. Attorney appearing for Defendant Itkowitz, and the State of Alaska Attorney General. However, even if this claim was still viable, it is not a jurisdictional defect, and could easily be remedied by the Court allowing Plaintiff the opportunity to serve the parties mentioned in this claim.

Therefore, the **Service** claim is moot.

Regarding defendant's allegation concerning the Americans with Disabilities Act and the Rehabilitation Act. Plaintiff would assert that Itkowitz was in some sort of contractual agreement with the State of Alaska, Department of Corrections, and thereby was an "agent" of the state, and thus acted **"under color of state law."** To act "under color of law" does not require that the accused be an officer of the state. It is enough that he is a willing participant in "joint activity" with a state or it's agents, in willingly subjecting any inhabitant of any state to the deprivation of any right , privilege or immunity secured or protected by the United States Constitution, or laws therefrom. "Every person who, under color of **[any]** statute, ordinance, regulation, custom, or usage, of any state or territory, subjects , or causes to be subjected, any citizen of the United States or other person within [t]he jurisdiction thereof to the deprivation of **[any]** right, privilege, or immunity secured by the Constitution and the laws, shall be held liable to the party injured in such action at law, suit in equity, or other proper proceeding for redress." Additionally, Plaintiff would request discovery to be able to discern

-7-

the nature of the contractual "agreement" or relationship between the Marshals and the state to determine if by such arrangement Itkowitz was in fact an "agent" of the state of Alaska. **42 U.S.C.S. § 1983**

Therefore, and pending materials that contradict the above assertion, Defendant Itkowitz acted under "color of law," and thus Plaintiff's **Americans with Disabilities Act**, and **Rehabilitation Act claims are applicable to this defendant** for appropriate damages.

Defendant Itkowitz has asserted that he is immune to prosecution regarding Plaintiff's claims under the aforementioned Congressional "Acts," citing **"sovereign immunity,"** and can only be sued for claims of violations of federal constitutional rights, with jurisdiction fashioned in **Bivens v Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 (1971).**

Plaintiff would assert that the prohibition on suits against the United States does **not** apply in suits which the plaintiff's sue for specific relief against a federal officer which alleges either (1) the officer acted beyond his statutory authority; or (2) the statute conferring power upon the officer is unconstitutional, this setting the exceptions to the bar of sovereign immunity; **Dugan v Rank, 372 U.S. 609, 621-622 (1963). In the acts described by the Plaintiff,** the Defendant Itkowitz acted in a personal manner not prescribed by his statutory authority, and no statute confers a power for him to exercise ill discretion or violations of clearly established constitutional laws, provisions and Congressional mandates, see example **Malone v Bowdoin, 369 U.S. 643, 647-648 (1962)[see also 16-105 Moore's Federal Practice-Civil § 105.23 (2007)].**

The Court should consider whether Itkowitz claims for sovereign immunity protection is a disguise to hide his violative acts so he

-8-

can continue to violate constitutional laws and mandates undeterred, or a misplaced immunity since the United States would not condone such acts by it's agents, nor allow their agents not to know clearly established constitutional or statutory rights; **Harlow v Fitzgerald, 457 U.S. 800, 818 (1982).** When a federal officer exceeds his authority, in so doing, no longer represents the government and hence looses the protection of sovereign immunity from suit. In fact, legal principles which define the contours of the doctrine of sovereign immunity are far from clear. In general, the United States, as sovereign, is immune from suit, but since Defendant Itkowitz was charged with the enforecement of the laws of the United States, he should have set an example for others to follow.

In short, victims of constitutional violations by federal officers have a right to recover damages against the officer in federal court despite the absence of any statute conferring such a right. In other words, where legal rights have been invaded, and a general right to sue for such invasion is supported by law, the federal court may use any available remedy to make good the wrongs done; **Bell v Wood**, 327 U.S. at 684

The United States Supreme Court handed down an opinion in **Bell** stating in pertinent part that "before deciding that there is no jurisdiction, the district court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to a right to recover under the Constitution and laws of the U.S.---but whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court assumed jurisdiction over the controversy. If the court does later exercise it's jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of prosecution." Moreover, federal officers who seek absolute exemption from personal liability for their uncontitutional conduct must bear

-9-

the burden of showing that public policy requires exemption of that scope; **Cleavinger v Saxner**, 474 U.S. 193, 106 S.Ct. 496 and **Antoine v Byers & Anderson Inc.**, 508 U.S. 429, 113 S.Ct. 2167 and when considering actions under 42 U.S.C.S. § 1983 See **Buckley v Fitzsimmons**, 509 U.S. 259, 113 S.Ct. 2606, where, as in this case, the defendant was deliberately indifferent to Plaintiff's disability and special needs, knew of the needs, but failed to modify or make reasonable modifications **28 C.F.R. § 42.540** for Plaintiff. The "meaningless access" to the airplane restroom, and retaliation by Defendant Itkowitz when Plaintiff attempted to exercise his rights under the law **28 C.F.R. § 35.134** clearly smacks of discrimination of Plaintiff on the basis of his disability and needs for that disability. No other prisoner on that flight had to get down on their knees to use the restroom, in fact no other prisoner would have had to defecate behind a snowpile at sub-zero weather either.

In the alternative, should the court not recognize the "liberal" intent of the pro se Plaintiff's complaint, and construe the complaint regarding the jurisdiction issues, then Plaintiff would request allowance to amend complaint to give the Court jurisdiction as expressed in **Bivens** supra. Plaintiff can show that he is a qualified individual with a disability, that he was attempting to exercise constitutionally protected rights, and not with profanity, berrating, or using body waste, when the vengeful federal officer, Itkowitz, violated the ADA, RA, 8th and 14th Amendments to the United States Constitution, during the flight, and thus has the right to recover damages in federal court despite any absence in the original or first amended complaint of any statute conferring such a right; **Carlson v Green**, 446 U.S. 14, 18, 100 S.Ct. 1468 (1980)>

-10-

Therefore the Court should either **liberally construe** pro se plaintiff's complaint regarding this contested issue, and **move forward as if proper jurisdiction had been pleaded**, or **allow Plaintiff to amend the complaint** to reflect the neede jurisdictional statute.

This request would hold true to the issues of Alaska Constitutional claims, since Plaintiff asserts Defendant Itkowitz was an agent of the State of Alaska that day due to the relationship, and the claim of untimeliness, which this Court has already determined in an ORDER dated April 23, 2007.

Conclusion:

Claims made that all officers had a meeting on the "tarmac" concerning prisoners with special needs and medical problems, with a boasted claim of transporting over 300 other prisoners with colostomies without incident would suggest that these officers had formulated a policy and practice concerning prisoners with a disability like the Plaintiff; **Redman v County of San Diego, 942 F.2d 1435, 1442 (9th Cir. 1991)(en banc)** yet eventhough corrections officials had taken steps to ensure accommodations for Plaintiff, the Defendant Itkowitz knowingly disregarded them supporting deliberate indifference under the "subjective component" of 8th Amendment claims. **Hick v Frey, 992 F.2d 1450, 1457 (6th Cir. 1993)** and to allow the Defendant Itkowitz to act the way he did claiming the acts condoned by the United States defeats the Bill of Rights concepts, the gurantees of the U.S. Constitution, and the Congressional mandates of the Americans with Disabilities Act, as well as the Rehabilitation Act.

Respectfully Submitted this 5th Day of July, 2007

BY: [signature]
Jack P. Earl, Jr.
Plaintiff Pro Se

-11-

Mr. Ziede Earl, If
Red Rock Correctional Center
1752 East Arica Rd.
Eloy, AZ 85291

United States District Court
District of Alaska
222 W. 7th Avenue, #4
Anchorage, AK 99513-7564

LEGAL — MAIL
LEGAL