RECEIVED
OCT 29 2007
CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

Jack L. Earl, Jr. / Pro Se
# 302235
Red Rock Correctional Center
1752 East Arica Road
Eloy, AZ                    85231

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JACK L. EARL, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:06-cv-00126-TMB |
| ) | **SECOND** |
| MIKE ADDINGTON, ) | **AMENDED COMPLAINT** |
| CYNDI ADDINGTON, ) | |
| MATTHEW ITKOWITZ, ) | |
| DEBBIE CARTER, Flight Nurse for ) | |
| U.S. Marshal-JPATS, ) | |
| JOHN DOE, United States Marshal, ) | |
| MICHAEL EVENSON, S.O.R.T. TEAM ) | |
| MEMBER-F.C.C., ) | |
| LEITONI TUPOU, ) | |
| ) | |
| Defendants. ) | |

Plaintiff, Jack L. Earl, Jr., a prisoner with a disability of the State of Alaska, brings this complaint against Defendants and alleges as follows:

PRELIMINARY STATEMENT

1. This is an action for declaratory, injunctive, and monetary relief brought under 42 U.S.C. § 1983, Title II of the American with Disabilities Act, Section 504 of the Rehabilitation Act, the Eighth and Fourteenth Amendments to the United States Constitution, and Article I, §§ 3, 7, and 12 of the Alaska Constitution to address the Defendants' failures to provide access to services and proper medical care of the Plaintiff during a transfer from Alaska to Arizona and for failures to provide due process protections to the Plaintiff after his arrival at the airport and contracted correctional center in Florence.

## JURISDICTION AND VENUE

2. This court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(3) and (4), and 28 U.S.C. § 1367(a). The matters in controversy arise under th Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and 28 U.S.C. § 1983.

3. Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

### PLAINTIFF

4. Jack Earl is a prisoner incarcerated by the State of Alaska at the Corrections Corporation of America Inc. facility Florence Correctional Center (CCA/FCC) in Florence, Arizona who has a physical impairment that substantially limits one or more of his major life activities. He has been denied access to programs, services, and activities offered and administered by defendants and was transferred to CCA/FCC under the authority and care of the defendants. Mr. Earl has exhausted the administrative remedies available to him.

### DEFENDANTS

5. Defendant Mike Addington is the former Director of Institutions for the department of Corrections (DOC) and is sued in his individual capacity. As Director of Institutions, Mr. Addington was responsible for the transfer preparation and transport of prisoners from one facility to another.

6. Defendant Cyndi Addington is the former Prisoner Transport Coordinator for DOC and is sued in her individual capacity. As Prisoner Transport Coordinator, Ms. Addington wa responsible for managing the transfer itself, including the special medical needs of prisoners being transferred and the briefing of other individuals

involved in the transfer.

7. Defendant Matthew Itkowitz is an employee of the United States Marshal Service (USMS) Air Operations and is sued in his official and individual capacities. Mr. Itkowitz was the Flight Officer in Charge of the airlift transferring prisoners for DOC to Mesa, Arizona. As the Flight Officer in Charge, Mr. Itkowitz was responsible for coordinating the management of prisoners with the DOC Prisoner Transport Coordinator, as well as briefing his own staff,

8. Defendant Debbie Carter is an employee of the United States Marshal Service as a Flight Nurse for the Joint Prisoner-Alien Transport System (USMS/JPATS) and is sued in her individual capacity. Ms. Carter was responsible for proper medical care, special needs care, and assistance if accommodations were so required.

9. Defendant John Doe is an employee of the United States Marshal Service, Air Operations, and is sued in his official and individual capacities. Mr. Doe, a United States Marshal, was responsible for coordinating prisoner management during the flight, including moving prisoners to restroom facilities and working with the Flight Nurse and Flight Officer in Charge regarding medical and/or security issues.

10. Defendant Michael Evenson is the former Florence Correctional Center employee for Corrections Corporation of America Inc. (CCA) and is a former Captain of the S.O.R.T. Team and is sued in his individual capacity. Mr. Evenson was responsible for securing and regaining control of problem prisoners through the appropriate application of force.

11. Defendant Leitoni Tupou is the Director of Institutions (DOI) for DOC and is sued in his official capacity. As DOI, Mr. Tupou is responsible for the transfer of preparation and transport of prisoners from one facility to another.

-3-

**FACTS**

12. In June 1995, after suffering for 11 months from rectal bleeding, loss of weight, and other symptoms while in the care of DOC, Mr. Earl was diagnosed by Dr. Charles Shannon with raging ulcerative colitis.

13. On April 10, 1996, after clinical treatment wa unsuccessful, Mr. Earl was airlifted from Spring Creek Correctional Center to Alaska Regional Hospital for emergency surgery to remove his perforated colon, a colostomy. A colostomy, performed when the colon is permanently damaged, is an incision into the colon to create an artifical opening or "stoma" to the exterior of the abdomen. This opening serves as a substitute anus through which the intestines can eliminate waste products. The bowel movements fall into a collection pouch.

14. As a result of the colostomy, Mr. Earl is unable to control his bowels and must defecate through a stoma into a colostomy pouch.

15. In a typical day, Mr. Earl must empty the colostomy pouch approximately seven to ten times; approximate cleaning time (without restraints) is five to fifteen minutes. The variation in time depends on whether the pouch needs to be changed, which occurs once a day, and whether medication is needed, which occurs as needed, or if the waste products are cleaned out by flushing the pouch with adequate water and other required supplies.

16. This impairment has substantially impacted many of Mr. Earl's major life activities:

   a. He has stopped eating regular breakfasts, limiting himself to a small bowl of oatmeal with a banana, to reduce the need for self-care.
   b. Mr. Earl must limit his physical exertion in life activities that involve physical activity, including walking, bending, lifting, and working.
   c. Mr. Earl must use a lumbar elastic band around his torso so that his

-4-

        intestine will not protrude or prolapse from his stoma if he strains while engaging in physical activity.

    d. Mr. Earl's major life activity of sleeping is also affected; he requires a double mattress and extra blanket for additional padding. Yet, he rarely sleeps for more than two hours at a time, due to discomfort and the need to evacuate the pouch's contents.

17. On November 24, 2000 the State of Alaska has stated that Mr. Earl's condition qualifies as a disability under the Americans with Disabailities Act (ADA).

18. To adequately care for the colostomy, Mr. Earl needs medical supplies. These supplies include:

    a. Running water
    b. Pre-cut 32mm opaque colostomy pouches
    c. DuoLoc pouch tail enclosure clip
    d. 3-inch strip of Transpore tape
    e. 1624W Tegraderm
    f. Medi-Aire room deodorizing spray
    g. 2-8 oz. irrigation bottles
    h. Karaya powder
    i. Stoma adhesive (paste or powder)
    j. Skin Barrier Wipes
    k. Bacitracin Zinc Ointment
    l. Adhesive remover Wipes
    m. Bio-waste disposal bag
    n. Toilet paper

19. To clean his colostomy pouch, Mr. Earl needs privacy and cleanliness. The cleaning procedure requires the use of two hands that can move independently. Mr. Earl must be able to prepare his supplies and remove the clip. Then, he must carefully clean the pouch, disinfect, and rinse the pouch. To dispose of fecal matter, he must have access to running water. Then Mr. Earl must dry the pouch and reapply the clip and tape. Except when Mr. Earl disposes of the fecal matter into the toilet, he maintains control of the pouch at all times

with his left hand.

20. To change his pouch, Mr. Earl needs privacy and cleanliness, He must first evacuate any fecal matter in the pouch, placing the used pouch in a biowaste disposal bag. Mr. Earl must then clean the stoma area, removing residual fecal matter and adhesive, then rinse and dry the area. If needed medication is then applied, with excess wiped off. Mr. Earl must then prepare the area to attach the new pouch and attach and secure the pouch. As with the cleaning of the pouch, Mr. Earl then thoroughly washes his hands to ensure cleanliness.

21. On or about September 12, 2003, DOC classified Mr. Earl as eligible for transfer to the Arizona contract facility through a special classification hearing. Mr. Earl appealed this decision. Mr. Earl, however, was transferred from Spring Creek Correctional Center in Seward to Anchorage Jail to await transfer to Arizona on or about December 8, 2003.

22. On or about December 14, 2003, Mr. Earl provided the mod officer at Anchorage Jail, with the supplies necessary to care for his colostomy prior to leaving the Anchorage Jail for the trip to Arizona. Mr. Earl was later assured by Officer Holcomb that the supplies had been boxed and clearly marked for ease of access during transport.

23. Mr. Earl, fully restrained in leg irons, belly chains, and handcuffs to the belly chains, was then transported from the Anchorage Jail to the airplane being used by the United States Marshal Service to transport the Alaskan prisoners.

24. On the tarmac outside the plane, Mr. Earl asked to empty his colostomy pouch. He was then escorted behind a snowbank by four officers, supervised by Director Addington. Mr. Earl was provided with two small hexagonal bottles joined together with plastic and a paper

towel to change his colostomy pouch from defendant Debbie Carter, Flight Nurse, while kneeling in the snow, in the cold weather. Mr. Earl remained handcuffed to bellychains during the entire cleaning process. He pleaded for assistance and defendant Carter made no attempts to assist Mr. Earl. Mr. Earl was however, urged to quickly comlete the cleaning process and returned to the plane.

25. When Mr. Earl complained about the conditions and his treatment, he was roughed up by the shortest of his escorts.

26. Once back at the plane, Mr. Earl boarded and was sat in the front of the right wingby the window. He remained fully restrained as previously described, with the bellychain riding directly over the pouch, which was tucked inside of Mr. Earl's pants.

27. Mr. Earl asked to use the restroom twice during the flight from Anchorage to Arizona, and neither time did the defendant Debbie Carter, Flight Nurse, knowing of the obsticles for reliable self-care, offer to assist Mr. Earl with self-care accommodations.

28. When Mr. Earl was escorted to the restroom fifteen minutes after he made his first request, he asked for his colostomy supplies. only to be told by a U.S. Marshal near the restroom that he didn't know anything about any supplies, and that Mr. Earl's restraints would not be removed in any manner. Defendant Debbie Carter, Flight Nurse made no effort to seek out the "supplies" nor assist Mr. Earl in self-care knowing that he was physically unable to properly perform the task himself, being fully restrained, and where no modifications were to be made by U.S. Marshals.'

29. Upon entering the restroom, Mr. Earl discovered the pouch full of gas. When he attempted to wash his hands afterwards, he further discovered there was no water in the plane restroom. He complained about this and was told to display his hands where they were sprayd with some kind of sanitizer.

30. About 2 hours later, Mr. Earl again asked to use the restroom to empty his colostomy pouch. When he again asked for his medical supplies, they were not produced, nor did defendant Debbie Carter, Flight Nurse, seek them out, or the reason they had not been given as promised. Mr. Earl again requested at least one hand free to attempt to do self-care, but it was denied. Defendant Carter knew or should have known of the previous difficulty complained of by Mr. Earl, yet she did nothing to assist in accommodating appropriate self-care in any way.

-7-

31. Because of the lack of supplies and the difficulty of cleaning a pouch with restraints, Mr. Earl mishandled the pouch as he was cleaning it, resulting in some of the contents falling directly on the toilet and Mr. Earl's clothing. He attempted to clean his pouch the best of his abilities, given his situation.

32. Mr. Earl was only given hand sanitizer after exiting the restroom.

33. After exiting the restroom, Mr. Earl was returned to his row and placed in the aisle seat. For the remainder of the flight, Mr. Earl endured threats and harassment from Mr. Itkowitz, who accused Mr. Earl of acting intentionally in the restroom. Mr. Earl listened to Mr. Itkowitz's harassment concerning his disability and status as a prisoner for some time before responding in kind. During the rest of the flight, Mr. Itkowitz purposefully physically assaulted Mr. Earl every time he walked by Mr. Earl's aisle.

34. Upon arriving in Arizona, but before deplanning, Mr. Earl noticed that Mr. Itkowitz spoke with several men dressed in black riot gear, pointing up towards him.

35. When Mr. Earl deplaned, he was seperated and roughly dragged by the men in riot gear, Florence Correctional Center S.O.R.T. team members. Mr. Earl was then slammed against the van several times by Mr. Evenson of the S.O.R.T. team, as Mr. Earl tried to figure out what as happening, causing injury and pain.

36. Mr. Earl was then escorted by Mr. Evenson and another team member to a van, where he was placed into a small caged area; other prisoners wearing black-boxes over their handcuffs were placed into the larger back caged area.

37. When they arrived at the Florence facility, Mr. Earl was left in the van for four hours, eventhough the other prisoners were taken

-8-

out of the van. When Mr. Earl was finally taken out of the van, he was taken by four S.O.R.T. team members, which included Mr. Evenson, to segregation unit, and at the direction of Mr. Evenson, was placed in a 3X3 foot, caged, locked shower and left alone.

38. Mr. Earl stood in the shower with full restraints for approximately one hour before the restraints were removed and he was told to remove all his clothing and ordered to throw them outside the shower.

39. When Mr. Earl requested a restroom to attend to his colostomy pouch, showing Mr. Eevnson the full pouch, he was denied. Mr. Earl remained in the shower for another hour.

40. An employee eventually came by and attempted to assist Mr. Earl with his self-care needs. Mr. Earl was then given clothing, by Officer Felix, restrained with handcuffs and leg-irons, and escorted into a cell with another prisoner, Kevin Frank. Mr. Earl asked that his ADA-permitted single cell be granted him; his request was denied.

41. Mr. Earl remained double-celled in segregation, locked down 24 hours a day, for seven of his eight days in segregation. During the first seven days of segregation, he was never told why he had been placed in segregation. When Mr. Earl was transferred to a single, handicapped cell on his eighth day of segregation, he was told that his placement was due to his actions on the plane trip from Alaska but no specifics were mentioned.

42. Once released from segregation, Mr. Earl was again double-celled.

43. CCA staff then accused Mr. Earl of hoarding medication due to a note by a nurse in his prescription sheet; a search of Mr. Earl's cell provided no evidence. When Mr. Earl brought this to the attention

of the nurse, the nurse filed a disciplinary report against him, who was then segregated as an immediate threat to the security and orderly administration of the facility, for five additional days.

44. Mr. Earl's problems with CCA staff were a result of him seeking his accommodations and grieving the denials of his accommodations, and the staff's filing of false disciplinaries and failures to comply with due process concerning segregation.

45. Mr. Earl received no relief from the grievances and appeals he filed challenging his mistreatment before, during, and after the airlift and the denial of due process regarding his subsequent segregation.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

46. Mr. Earl has exhausted all administrative remedies available to him. A copy of the final decision of the State of Alaska, dated July 19, 2004, is attached to this amended complaint.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION**

**Violation of the Americans with Disabilities Act**

47. Plaintiff is a qualified individual with a disability as defined in the Americans with Disabilities Act. He has a physical impairment that substantially limits one or more major life activity. As a state prisoner, he meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by DOC. 42 U.S.C. § 12102(2); 42 U.S.C. § 12131(2).

48. Defendants Mike Addington, Cyndi Addington, Matthew Itkowitz, John Doe U.S. Marshal, Debbie Carter, Flight Nurse, and Director of Institutions Leitoni Tupou discriminated against the physically

-10-

disabled Mr. Earl by denying him appropriate supplies and conditions prior to and during the airlift to Arizona.

49. The defendants named above discriminated against the PLaintiff on the basis of his disability in violation of 42 U.S.C. § 12132.

50. The defendants named above are agents or officials of public entities and/or public entities as that term is defined under 42 U.S.C. § 12131(1)(B).

## SECOND CAUSE OF ACTION

### Violation of Section 504 of the Rehabilitation Act

51. Plaintiff is a qualified individual with a disability as defined in Section 504 of the Rehabilitation Act. He has a physical impairment that substantially limits one or more major life activity, including but not limited to providing self-care. As a state prisoner, plaintiff meets the essential requirements for the receipt of services or the participation in programs or activities provided by the defendants. 42 U.S.C. § 12102(2); 42 U.S.C. § 12131(2); 29 U.S.C. § 794.

52. Defendants Mike Addington, Cyndi Addington, Matthew Itkowitz, John Doe U.S. Marshal, Debbie Carter and Debbie Carter, Flight Nurse discriminated against plaintiff solely on the basis of his disability by failing to provide appropriate supplies and conditions prior to and during the airlift to Arizona.

## THIRD CAUSE OF ACTION

### Violation of the United States Constitution

53. Defendants Mike Addington, Cyndi Addington, Matthew Itkowitz, John Doe U.S. Marshal, Debbie Carter, Flight Nurse and Director of Institutions Leitoni Tupou were deliberately indifferent to Mr. Earl's

-11-

serious medical needs prior to and during the airlift to Arizona.

54. The defendants named above were fully aware of Mr. Earl's serious medical condition and special needs but purposely denied him appropriate supplies and conditions for self-care or contingent medical assistance.

55. The defendants named above were deliberately indifferent to Mr. Earl's serious medical needs on December 14, 2003 depriving him of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

**FOURTH CAUSE OF ACTION**

Violation of the Alaska Constitution

56. Defendants Mike Addington, Cyndi Addington, Matthew Itkowitz, John Doe U.S. Marshal, Debbie Carter, Flight Nurse and Director of Institutions Leitoni Tupou were deliberately indifferent to Mr. Earl's serious medical needs prior to and during the airlift to Arizona.

57. The defendants named above were fully aware of Mr. Earl's serious medical condition and special needs but purposely denied him appropriate supplies and conditions for self-care or contingent medical asistance.

58. The defendants named above were deliberately indifferent to Mr. Earl's serious medical needs on December 14, 2003 depriving him of his rights under Article I, § 12 of the Alaska Constitution.

**FIFTH CAUSE OF ACTION**

Violation of the Americans with Disabilities Act

59. Plaintiff is a qualified individual with a disability as defined in the Americans with Disabilities Act. Mr. Earl has a physical impairment that substantially limits one or more major life activity. As a state prisoner, he meets the essential eligibility

requirements for the receipt of services or the participation in programs or activities provided by the Department of Corrections. 42 U.S.C. § 12102(2); 42 U.S.C. § 12131(2).

60. Defendant Michael Evenson, a Florence Correctional Center S.O.R.T. team member discriminated against the physically disabled Mr. Earl by denying him appropriate supplies and conditions after arriving at the airstrip and correctional center in Florence, Arizona.

61. The defendants named above discriminated against Plaintiff on the basis of his disability in violation of 42 U.S.C. § 12132.

62. The defendants named above are agents or officials of public entities and/or public entities as that term is defined under 42 U.S.C. § 12131(1)(B).

**SIXTH CAUSE OF ACTION**

**Violation of the Rehabilitation Act**

63. Plaintiff is a qualified individual with a disability as defined in Section 504 of the Rehabilitation Act. Mr. Earl has a physical impairment that substantially limits one or more major life activity, including but not limited to providing self-care. As a state prisoner, Plaintiff meets the essential requirments for the receipt of services or participation in programs or activities provided by Defendants.

64. Defendant Michael Evenson, a Florence Correctional Center S.O.R.T. team member discriminated against Plaintiff solely on the basis of his disability by failing to provide appropriate supplies and conditions after arriving at the airstrip and correctional center in Florencce, Arizona.

**SEVENTH CAUSE OF ACTION**

**Violation of the United States Constitution**

65. Defendant Michael Evenson, a Florence Correctional Center S.O.R.T. team member was deliberately indifferent to Mr. Earl's serious medical needs after arriving at the airstrip and correctional center in Florence, Arizona on December 14, 2003.

66. The defendants named above were fully aware of Mr. Earl's serious medical condition and his special needs but purposely denied him appropriate supplies and conditions for self-care or contingent medical assistance.

67. The defendants named above were deliberately indifferent to Mr. Earl's serious medical needs on December 14, 2003 depriving him of his right under the Eighth and Fourteenth Amendments to the United States Constitution.

**EIGHTH CAUSE OF ACTION**

**Violation of the Alaska Constitution**

68. Defendant Michael Evenson, a Florence Correctional Center S.O.R.T. team member was deliberately indifferent to Mr. Earl's serious medical needs after arriving at the airstrip and correctional center in Florence, Arizona on December 14, 2003.

69. The defendants named above were fully aware of Mr. Earl's serious medical condition and his special needs but purposely denied him appropriate supplies and conditions for self-care or contingent medical assistance.

70. The defendants named above were deliberately indifferent to Mr. Earl's serious medical needs on December 14, 2003 depriving him of his rights under Article I, § 12 of the Alaska Constitution.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff requests that this Court grant him the following relief:

-14-

1. Declare that the acts and ommissions described in this complaint violated Mr. Earl's rights under the Americans with Disabilities Act, the Rehabilitation Act, and the United States and Alaska Constitutions.

2. Issue an injunctive order against the Director of Institutions, requiring new polices and procedures concerning the transfer of disabled prisoners and staying all future transfers of disabled prisoners until the Court is satisfied with such policies and procedures.

3. Enter judgment in favor of Mr. Earl for nominal, compensatory, and punitive damages, as allowed by law, against each defendant.

4. Order such other relief as this Court may deem just and proper.

RESPECTFULLY SUBMITTED this 19th day of October, 2007.

By: _____
Jack L. Earl, Jr. / Pro Se
Plaintiff