NELSON P. COHEN
United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail:  richard.pomeroy@usdoj.gov

Counsel for Defendant Matthew Itkowitz

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JACK LAWRENCE EARL, JR.,

       Plaintiff,

  v.

MIKE ADDINGTON, CYNDI
ADDINGTON, MATTHEW ITKOWITZ,
et. al.,

       Defendants.

Case No. 3:06-cv-00126-TMB

**MOTION FOR SUMMARY JUDGMENT and MEMORANDUM IN SUPPORT**

Defendant Matthew Itkowitz, through counsel, moves, pursuant to Fed. R. Civ. P. 56, for summary judgment on the sole remaining issue – whether he is liable under 42 U.S.C. § 1983 as a "state actor".

This motion is supported by the following memorandum.

## INTRODUCTION

Plaintiff, Jack Lawrence Earl, Jr. (Earl), sued Matthew Itkowitz, an employee of the United States Marshal Service, alleging that Deputy Itkowitz violated Title II of the Americans with Disabilities Act (42 U.S.C. § 12132); Section 504 of the Rehabilitation Act (29 U.S.C. § 794); the Eighth and Fourteenth Amendments to the U. S. Constitution, and Article I, sections 3, 7 and 12 of the Alaska Constitution.  Itkowitz moved to dismiss, and this Court, at Docket 114, dismissed the claims alleging violations of the Americans with Disabilities Act, the Rehabilitation Act, claims of violations of the state constitution, and claims that Earl asserts pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395 (1971).

However, the Court left open the possibility that Earl could pursue claims against Deputy Itkowitz under 42 U.S.C. § 1983 in his official capacity if he was a "state actor."  Docket 114 at 8-9.  As explained below, such a claim would be untimely.  Even if it were timely, the claim would fail because no Constitutionally protected right was violated and none of the limited circumstances under which a federal employee may be considered a state actor for purposes of 42 U.S.C. § 1983 liability are found in the present case.  Accordingly, Earl's remaining claim against Itkowitz under section 1983 should be dismissed.

## FACTUAL BACKGROUND

The Court, through prior briefing, is familiar with the factual background of this case. Mr. Earl is a prisoner in the State of Alaska correctional system who, according to the allegations in Earl's complaint, was transferred from Alaska to a contract correctional facility in Florence,

Arizona on December 14, 2003.[1]  Deputy Itkowitz was the flight officer in charge of the aircraft

that took Earl and other state prisoners from Alaska to Arizona.

Pursuant to 18 U.S.C. § 4008 and 28 C.F.R. § 0.111(k), the United States Marshals

Service (USMS) is responsible for the transportation of federal prisoners.  To this end, Congress

created the Justice Prisoner and Alien Transportation System (JPATS) in the USMS to maintain

and operate aircraft for transportation of federal prisoners and illegal aliens.  See 18 U.S.C. §

4013, note.  Pursuant to Pub.L. 105-119, Title I, November 26, 1997, 111 Stat. 2444 (31 U.S.C. §

6505, note) and 28 C.F.R. § 0111(k), the USMS is authorized to transport state prisoners

pursuant to intergovernmental agreements.  31 U.S.C. § 6505 authorizes federal agencies to

provide federal services to state governments using federal resources as part of their federal

duties.  P.L. 105-119 includes transportation of state prisoners by the USMS as one of the federal

services which can be provided to state governments.  Thus, the USMS utilizes the JPATS

system to transport state prisoners pursuant to intergovernmental agreements on a reimbursable

basis.  The mission is undertaken by the USMS as part of its normal federal assignments in

accordance with USMS flight policies and procedures as a routine JPATS mission.  Mr. Earl was

being transported from Alaska to Arizona on a JPATS flight pursuant to such an agreement

between the State of Alaska and the USMS.

At all relevant times, Deputy Itkowitz was an employee of the USMS, JPATS.  While on

board the flight that transported plaintiff from Anchorage, Alaska to Phoenix, Arizona, Deputy

Itkowitz was only performing his USMS function as part of his USMS, JPATS assigned duties.

---

[1]  Docket 1 at ¶¶ 4, 26.

Earl v Addington, et. al.
Case No. 3:06-cv-00126-TMB                              3

Providing security during the flight was his assignment as given to him by his USMS, JPATS

supervisors and was part of his everyday USMS duties.  He was never under the supervision or

control of the Alaska DOC, or performed any duties for the state or acted  in concert with the

state.  His salary was paid by the USMS.  He worked solely in his capacity as a USMS employee.

The USMS was performing its JPATS mission and was simply providing an independent and

separate federal transportation service to the state.

During the flight from Alaska to Arizona, Earl asked to use the restroom twice.[2]  The first

time, he was escorted to the restroom, but the unidentified deputy U. S. Marshal near the

restroom "didn't know anything about [his colostomy] supplies and that Earl's restraints would

not be removed . . . ."[3]  When he exited the restroom, he was given a hand sanitizing lotion

because the water was not working in the restroom.[4]  On his second trip to the restroom, Earl

claims to have had "difficulty cleaning the pouch with restraints, [and he] mishandled the pouch

as he was cleaning it, resulting in some of the contents falling directly onto the toilet and Earl's

clothing."[5]  Earl alleges that for the remainder of the flight, he "endured" threats and harassment

from Itkowitz, who accused him of acting intentionally in the bathroom.[6]  Earl claims that

Itkowitz harassed him about his disability and status as a prisoner and "purposefully physically

---

[2]  *Id.* at ¶ 31.

[3]  This Court has noted that Earl stated in his grievance to the State of Alaska that "the
flight nurse was uninformed about his supplies . . . and that his colostomy supplies . . . were not
on the plane."  Docket 62 at 6.

[4]  *Id.* at ¶ 33.

[5]  *Id.* at ¶ 35.

[6]  *Id.* at ¶ 37.

assaulted"[7] Earl every time he walked by.[8]  Earl was handed over to officials in Arizona upon arrival.

## DISCUSSION

### A.  Standards for Summary Judgment

Summary judgment is appropriate when there 'is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law,"  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The utility of summary judgment in federal courts has been increased dramatically by the Supreme Court's clarification of the burden of the parties under Fed. R. Civ. P. 56.

> First, the courts have made it clear that if a non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine disputable fact with respect to the existence of that element, then summary judgment is appropriate.  . . . Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Finally, if the factual context makes the non-moving parties claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. . . .  No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment.

*Cal. Arch. Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citations omitted).

In the federal system, summary judgment is not a "disfavored procedural shortcut." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 2555 (1986).  This court is required to

---

[7]  What this alleged assault consisted of is not specified.

[8]  *Id.*

Earl v Addington, et. al.
Case No. 3:06-cv-00126-TMB                     5

enter summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 2552-2553. Summary judgment is not defeated by any factual dispute; the issue must be genuine and material. *Bukoskey v. Shuham*, 666 F. Supp. 181, 184-85 (D. Alaska 1987).

In the present case, there are no genuine issues of material fact. At issue are legal questions well suited to summary judgment.

### B. Timeliness of Earl's Claim under 42 U.S.C. § 1983.

The Court previously dismissed Earl's Bivens claim as untimely. Docket 114 at 6-7. Like Bivens, section 1983 of title 42 does not contain a statute of limitations, so federal courts apply the forum state's personal injury statute of limitations for section 1983 claims. See *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Fink v Shedler*, 192 F.3d 911, 913 (9th Cir. 1999). Federal law, however, governs when a claim accrues. A claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action. See *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir.1996). Like Earl's Bivens claim, he knew or should have known immediately of the injury he alleges is the basis for this claim.

In Alaska, the statute of limitations is two years. AS § 09.10.070; *DeNardo v. Murphy*, 781 F.2d 1345, 1346 (9th Cir. 1986). Earl filed this complaint on May 30, 2006. The events of which he complains occurred on December 14, 2003, more than two years before he filed his complaint. To be timely, Earl should have filed his Bivens claim on or before December 13, 2005. He filed his complaint one hundred sixty eight (168) days after this deadline. Unlike claims against the state and its employees, there is no administrative claim process to exhaust

against a federal official being sued under section 1983.  Therefore, any claim that Earl might

assert under section 1983 is untimely and should be dismissed.

### C.  Itkowitz did not violate any Constitutionally Protected Right.

Earl's failure to timely file his complaint should be dispositive.  Nevertheless, if the Court

wished to delve further, Earl's claim against Itkowitz would fail because he did not violate a

Constitutionally protected right nor was he a "state actor" subject to section 1983 liability.

Earl complains that his colostomy supplies were not on the airplane, but there is no

allegation that Itkowitz had any control over whether the State of Alaska employees gave those

supplies to the flight nurse.  See Docket 62 at 6.  Similarly, if the sink in the restroom of the

airplane was not working, there is no allegation that Itkowitz was responsible for aircraft

maintenance.  Earl alleges that he "endured" threats and harassment from Itkowitz because of the

mess that Earl made in the bathroom.  Earl also claims that Itkowitz harassed him about his

disability and status as a prisoner and "purposefully physically assaulted" Earl every time he

walked by.  Earl has not alleged that he suffered any injuries from this alleged assault.

Earl's claim of a constitutional violation is insufficient.  In *Hudson v. McMillian,* 503 U.S. 1

(1992), the Court held that " *de minimis* uses of physical force" are not constitutional violations,

focusing on the amount of *force* used, not the nature or severity of the *injury* inflicted. *Id.* at 9-10.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,

violates a prisoner's constitutional rights." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973).

Indeed, not even "every *malevolent* touch by a prison guard gives rise to a federal cause of action."

*Hudson v. McMillian,* 503 U.S. 1 at 9.  Earl's allegations fall into the *de minimis* category of minor

incidents that do not rise to the level of a violation of a constitutional right.

Alternatively, if Earl's claim were read to be a claim under the Eighth Amendment for deliberate indifference to his medical needs, it would still be insufficient.  The Eighth Amendment may be violated when prison officials demonstrate deliberate indifference to serious medical needs. *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir.2002).  An official acts with "deliberate indifference ... only if the [he or she] knows of and disregards an excessive risk to an inmate's health and safety." *Gibson v. County of Washoe, Nevada,* 290 F.3d 1175, 1187 (9th Cir.2002).  Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson,* 290 F.3d at 1188 (citation omitted).  "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds, WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (1997) (en banc) ("A finding that the defendant's neglect of a prisoner's condition was an 'isolated occurrence,' or an 'isolated exception,' to the defendant's overall treatment of the prisoner ordinarily militates against a finding of deliberate indifference.") (internal citations omitted); *see also Broughton v. Cutter Labs.,* 622 F.2d 458, 460 (9th Cir.1980) (per curiam) (mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment).

Earl's complaint of not having his colostomy supplies on the flight from Alaska to Arizona, while probably annoying or perhaps an inconvenience, is not a situation that presents a substantial risk of serious harm.  He has alleged nothing that approaches such a situation.  In an

Earl v Addington, et. al.
Case No. 3:06-cv-00126-TMB                           8

analogous situation, another district court found that

> Inability to access a toilet is insufficient to state a violation of plaintiff's Fourteenth Amendment rights. While deliberate indifference to a detainee's medical needs may violate his constitutional rights, such a deprivation occurs only where the detainee has an objectively serious medical condition and his need was consciously disregarded. *See, Edwards v. Snyder,* 478 F.3d 827, 830-31 (7th Cir.2007). The medical condition must have " 'been diagnosed by a physician as mandating treatment or ... [be] so obvious that even a lay person would perceive the need for a doctor's attention.' " *Id.* (citing *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir.2005)). Plaintiff's need for access to a toilet does not meet that standard.

*Johns v. Amtrak Police Unit*, 2007 WL 1655281 (N.D.Ill.2007)(footnotes omitted). Earl's inconvenience of not having his colostomy supplies is less than not having access to a toilet at all. It does not rise to the level of a violation of a constitutional right.

**D.  Itkowitz was not a State Actor under 42 U.S.C. § 1983.**

Finally, if the Court were to find that Earl's claim was timely and that he made out a prima facie claim of a Constitutional violation, his claim would still have to be dismissed because Itkowitz was not a "state actor".  Generally, Section 1983 provides a remedy only for deprivation of constitutional rights by persons acting under color of law of any state or territory or the District of Columbia, and not for deprivation of rights by federal officials acting under color of federal law. *Daly-Murphy v. Winston*, 837 F.2d 348 (9th Cir. 1987).  However, federal officials sued in their official capacity may be subject to injunctive relief under § 1983 if they "conspire with or participate in concert with state officials who, under color of state law, act to deprive a person of protected rights." *Cabrera v. Martin*, 973 F.2d 735, 741 (9th Cir. 1992) (quoting *Scott v. Rosenberg,* 702 F.2d 1263, 1269 (9th Cir.1983), *cert. denied,* 465 U.S. 1078 (1984)).

Earl v Addington, et. al.
Case No. 3:06-cv-00126-TMB                    9

Action under color of state law has been interpreted to mean "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Billings v. United States,* 57 F.3d 797, 801 (9th Cir.1995). "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *Scott,* 702 F.2d at 1269. Federal officials do not become "state actors" unless "[t]he State ... has so far insinuated itself into a position of interdependence with ... [the federal officials] that it must be recognized as a joint participant in the challenged activity...." *Kletschka v. Driver,* 411 F.2d 436, 449 (2d Cir .1969)(quotations and citation omitted). To transform a federal official into a state actor, a plaintiff must show that federal and state officials engaged in a conspiracy or "symbiotic" venture to violate a person's rights under the Constitution or federal law. *Cabrera v. Martin,* 973 F.2d 735, 742-743 (9th 1992) ("To transform a federal official into a state actor, the appellees must show that there is a "symbiotic relationship" between the [federal defendants] and the state such that the challenged action can "fairly be attributed to the state.""); *Kali v. Bowen,* 854 F.2d 329, 331 (9th Cir.1988) ("[T]he plaintiffs make no allegation that federal and state officials conspired so that the actions taken by the federal officials could be deemed to have been 'under color of state law'...."); *Gibson v. United States,* 781 F.2d 1334, 1343 (9th Cir.1986) ("Federal officers acting under federal authority are immune from suit unless the state or its agents significantly participated in the challenged activity.").

In the present case, Deputy Itkowitz was at all times acting under color of federal law, not state law. He was the officer in charge of the US Marshal aircraft transporting prisoners. Part of

Earl v Addington, et. al.
Case No. 3:06-cv-00126-TMB                    10

his federal job was to transport state prisoners from one state to another. The execution of this task was not dependent upon any state authority. Nor is there any conspiracy between the State and Deputy Itkowitz; he was performing his federal duties in supervising the flight. If the State and the Marshal Service are seen as acting jointly in transporting Earl to Arizona, it was under the color of federal law. *See Scott,* 702 F.2d at 1269. The mere act of placing a state prisoner on a federal aircraft does not transform the aircraft and its crew into state actors.

However, the evidence demonstrates that Itkowitz was at all times acting under color of federal law, not state law, and therefore is not subject to § 1983 injunctive, or prospective, relief. Because § 1983 provides no cause of action against federal agents acting under color of federal law, *Daly-Murphy v. Winston,* 837 F.2d 348, 355 (9th Cir.1987), the § 1983 claim should be dismissed.

**CONCLUSION**

Earl's complaint should be dismissed with prejudice.

//        //

//        //

//        //

//        //

//        //

Respectfully submitted this 24th day of April, 2008, in Anchorage, Alaska.


NELSON P. COHEN
United States Attorney


s/Richard L. Pomeroy
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov
Alaska Bar No. 8906031


**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2008,
a copy of the foregoing **MOTION FOR
SUMMARY JUDGMENT and MEMORANDUM
IN SUPPORT** was served via U.S. mail on:

Jack Lawrence Earl, Jr.
302235
RED ROCK CORRECTIONAL CENTER/CCA
1750 E. Arica Road
Eloy, AZ 85231

and electronically on
John K. Bodick
Timothy J. Bojanowski


s/ Richard L. Pomeroy