Jack L. Earl, Jr. / Pro Se
# 302235
Red Rock Correctional Center
1752 East Arica Road
Eloy, AZ            85231

**RECEIVED**

JUN 1 6 2008

CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JACK L. EARL, JR., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 3:06-cv-00126-TMB |
| MIKE ADDINGTON, et al., | ) **MEMORANDUM IN SUPPORT OF** |
| | ) **PLAINTIFF'S OPPOSITION TO MOTION** |
| Defendants. | ) **FOR SUMMARY JUDGMENT OF DEFENDANT** |
| | ) **MATTHEW ITKOWITZ** |

### INTRODUCTION

At this point in this case, the Court dismissed Plaintiff's claims against the Defendant Matthew Itkowitz (herein after "Itkowitz") regarding allegation of violations of the Americans with Disabilities Act, Title II (42 U.S.C. § 12132); Rehabilitation Act, section 504 (29 U.S.C. § 794) concerning claims made in [h]is "individual capacity."

Eventhough Plaintiff did not specifically make claims pursuant to Bivens v Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 (1971) the Court held that they were time barred, and thus sua sponte dismissed it. The Court then indicated that allegations made by the Plaintiff, that "Itkowitz" could have been a state actor in his capacity as an employee of the United States Marshal Service during the violations, and as claimed by the Plaintiff, during [h]is participation in such "joint activity" with the state department of corrections in transporting the Plaintiff whom is an Alaska state prisoner, across state lines, from Alaska to Arizona.

That in the event that "Itkowitz" was a state actor, he could be held liable for the claimed violations under the Civil Rights Act.

Additionally, the Court was unclear whether "Itkowitz" could be held liable for the alleged violations asserted by the Plaintiff under the Alaska Constitution, and dismissed them without prejudice, and did so, apparently, because Plaintiff failed to object when "Itkowitz" moved to have that claim dismissed. This to allow Plaintiff to litigate (if he so choose) at the state court level.

"Itlowitz" claimed that the Plaintiff failed to exhaust his administrative remedies even if he was considered a "state actor" under the Civil Rights Act, and accordingly has moved for summary judgment.

ADDITIONAL FACTUAL BACKGROUND

Plaintiff believes this Court is already familiar with this case, having reviewed the prior briefing, declarations of witnesses, presented by Plaintiff, and the complaint, regarding the Alaska prisoner air transport from Alaska to Arizona, in which "Itkowitz" was directly involved.

As asserted by "Itkowitz" he is denying that he was a "state actor" during all relevant times, that even if he was, the Plaintiff's "state actor" claim is untimely, and even if it is timely, that no protected right was violated and none of the limited circumstances under which a federal employee may be considered a "state actor" for purposes of 42 U.S.C. § 1983 liability are found.

In "Itlowitz's" motion for summary judgment he stated that Congress created the Justice Prisoner and Alien Transport System (herein after JPATS) in the United States Marshal Service to "maintain and operate aircraft for transportation of f**ederal** prisoners and **illegal aliens**."

Then cites 18 U.S.C. § 4013, note. Pursuant to Pub.L. 105-119, Title I, November 26, 1997, 111 Stat. 2444 (31 U.S.C. § 6505, note), and 28 C.F.R. § 110(k), and alleged that "the USMS is authorized to transport prisoners pursuant to i**ntergovernmental agreements**.

-2-

"Itkowitz" further states that this service can be provided to state governments, through intergovernmental <u>agreements</u> and on a <u>re-imbursable basis.</u> Then further claims that he was never under the super-vision or control of the Alaska DOC, or performed **any** duties for the state or **acted** <u>in concert with the state.</u>

Also, "Itkowitz" denies that he assaulted the Plaintiff, further claiming that "what this alleged assault consisted of is not specific."

The Plaintiff not taking "Itkowitz's" assertion concerning the "authorization" cited that would obviate his civil responsiblities nor that he was a "state actor," moved the Court to hold his response to "Itkowitz's" motion for summary judgment, in abeyance, and for Court order directing "Itkowitz" to serve Plaintiff with "any documentations concerning the **agreemen**t made with Alaska DOC & USMS regarding the air transport, December 13, 2003. "Itkowitz," apparently not wanting to wait for court-order, sent the Plaintiff a copy of said agreement, entitled <u>COOPERATIVE PRISONER TRANSPORTATION AGREEMENT</u>. (see Exhibit A)

Other informations worth repeating are that the Plaintiff, had made his disability needs known to the flight staff, who'd he found out later had had a discussion on the tarmac, before the flight, to discuss every inmate that had  medical and disability needs. (see R. Statement of AKDOC Sgt. Cynthia Addington)  In addition, when Plaintiff asked about his supplies for self-care USMS employees alleged not to know anything about them, which would include their supervisor "Itkowitz," who it was stated was in fact informed regarding the Plaintiff's colostomy, disability needs. Moreover, when the Plaintiff accidentially mishandled his pouch, spilling a minute amount of it's contents on the floor, and toilet, as well a little on his shoes, he had found out that when he requested at least one hand free to do self-care, that it was sometimes

done (which was stated by a USMS employee on the flight) but denied as optional by "Itkowitz."

Included, reiteratable, the Plaintiff believes that because of the way his situation was improperly dealt with by AKDOC and USMS that they (AKDOC Sgt. Cynthia Addington and USMS "Itkowitz,") conspired together to generate official documents falsifying their participations, the alleged misbehaviors, alleged profanity, and state of mind, of the Plaintiff, to bolster their credibilities and besmerch the Plaintiff's.

DISCUSSION

## A. Standards for Summary Judgment:

Summary judgment is appropriate only where the Court determines there are "no genuine issues of material fact," and that if the moving party has met their burden of proof, would be entitled to a judgment as a matter of law; FRCP 56 (c) and see Anderson v Liberty Lobby Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)

In reviewing Plaintiff's complaint, all factual allegations "are taken as true and construed (liberally if plaintiff pro se) in light most favorable to the non-moving party" Epstein v Wqshington Energy Co, 83 F.3d 1136, 1140 (9th Cir. 1996) making dismissal improper where the pleadings, depositions, answers to interogatories, affidavits, declarations, as well as other materials in the record, demonstrate that there exists disputable and genuine issues of material facts. To accomplish this the Court makes factual review; Young v Selsky, 41 F.3d 47, 54 (2nd Cir. 1994)

In this case there does exist "genuine" issues of material facts in dispute making summary judgment on the remaining claims inappropriate.

-4-

**B. Timeliness of Earl's Claim under 42 U.S.C. § 1983:**

It is true that the Court has previously dismissed, what the Court construed as a pro se attempt to present a "Bivens claim," but the Court , in a previous ruling (see Court-Order, dated April 23, 2007) stated that, "In his (Earl's) initial grievance, Mr. Earl states that that when he was on the tarmac, the flight nurse (Debbie Carter, and JPATS member) was informed about his supplies.' Common sense would dictate that if "Itkowitz" was the supervisor he would have, or should have been informed regarding this by the flight nurse. The Court further recognized that the Plaintiff's grievance "certainly states that pre-parations for his transfer, given his handicap, were not made." These statements regarded "ADA & other abuses during the transfer,' (Docket No. 42, Exhibit C) which included his mistreatment "from the time he arrived on the airport tarmac,' up to and including mistreatment "re-ceived at the facility in Arizona." The Court further held that the "only thing (the Plaintiff) fails to specify in his grievance (which was the primary document) was the names of the individuals responsible for the preparations (and it is unclear whether Earl had this informa-tion at the time), or ask for specific relief from those individuals.'

The Court concluded this "order" by expressing that "How Mr. Earl's grievance was classified, or whether he knew and gave the names of the individuals responsible for transfer preparations, should not be used to contravene the purpose of the exhaustion rule - that is, to allow for a chance for the complaint to be addressed and possibly re-solved administratively, before court action."

Of course, in "Itkowitz's" defense he states in his Motion for Summary Judgment (at pp. 6,7) that "Unlike claims against the state and it's employees, there is no administrative claim process to exhaust

-5-

against federal official being sued under section [§] 1983.'

However, the case of <u>Chaney v Catron</u>, 2005 U.S. Dist. LEXIS 15479 would suggest that there is in fact an "administrative process" when prisoners wish to pursue civil rights claims against federal employees, as is "Itkowitz." In <u>Chaney</u> plaintiff was a federal prisoner whom sought relief, in a civil rights action, against a federal employee of the Bureau of Prisons (BOP), but in order to submit the formal complaint to the court, he first had to exhaust the inmate grievance procedures, just like a state prisoners must do; <u>see</u> <u>Porter v Nussle</u>, 534 U.S. 516, 152 L.Ed.2d 12, 122 S.Ct. 983 (2002); <u>Lavista v Beeler</u>, 195 F.3d 254, 256 (6th Cir. 1999) compare <u>Ricks v Peterson</u>, 26 Fed. Appx. 588, 2001 WL 1345089.

Plaintiff would then assert that this Court has made it views known regadring naming all individuals requirement, and taking that into account, and liberally contruing Plaintiff's civil rights grievance (just like federal prisoners must do) should find that eventhough he was not afforded an avenue addressing specifically "Itkowitz's" viola- tions during the flight, conspiring with Defendant Cynthia Addington to procure fraudlent official documents, and coercing, by false allega- tions, Defendant Evenson's violations, that the initial grievance cited civil rights violations as well as ADA violation, and as previously held was in fact timely, and therefore dismissal of the civil rights claims under § 1983 should not be dismissed.

In further support, Plaintiff submits (Exhibit B) which would suggest that the USMS and JAPTS members learned from the Plaintiff's misfortunate violations he endured during his air transport by them, and made every effort not to make the same mistakes twice.

### C. "Itkowitz" did violate Plaintiff's Constitutionally Protected Rights:

"Itkowitz" now chooses to minimize what negative impacts his viola-
tive acts, during and after the air transport caused the Plaintiff,
stating that "Earl has not alleged that he suffered any injuries from
the alleged assault, which he previously claimed he did not know what
it consisted of, because it was not specific.' Earl would assert that
the Court has his complaint and supporting witness declarations which
suggest a specific repeated assault by "Itkowitz" during the flight,
this after "Itkowitz" had berrated him, accused him of purposely spill-
ing in the restroom, telling him he derserved a colostomy, "you should
be glad you've been treated as good as you have," "your just a prisoner"
and "I'd like to beat the shit out of you," not to mention the hurtful
sexual innuendos. All of these circumstances support injury, whether
fear of being beaten (which was heightened by SORT Team actions of
Defendant Evenson) divulging confidential medical informations, writing
false reports whos only purposes were to hide Defendants' violations,
bolster their credibility, and injure the Plaintiff's.

Plaintiff had a constitutional right to be sure of bodily
integrity; Hovater v Robinson, 1 F.3d 1063 (10th Cir. 1993) the Plain-
tiff has standing, because a genuine material fact exists that shows
he suffered and was threatened with some distinct and palpable injury,
i.e. what the false reports would cause, and possible further beating)
thus the personal stake requirement is satisfied, especially since
there exists some causal connection between the assertions of Plaintiff
and the conduct being challenged; Allen v Wright, 468 U.S. 737, 82
L.Ed.2d 5561, 104 S.Ct. 3315 (1984) This of course would include the
unjustified dissemination of Plaintiff's confidential medical informa-
tion (e.g. you have a colostomy, and that's what you deserve') to non-

medical staff and other prisoners, which is also unconstitutional; <u>see</u>
<u>Woods v White</u>, 689 F.Supp.874-76 (W.D. Wis. 1988); <u>Williams v Edwards</u>,
547 F.2d 1206, 1217 (5th Cir. 1977) and <u>Tillery v Owen</u>, 907 F.2d 418 (3d
Cir. 1990); <u>Casey v Lewis</u>, 834 F.Spp. 1477, 1546 (D. Ariz. 1993).

Clearly established federal rights are violated when a reasonable
person should have known that their actions or ommissions could be
violative; <u>Estelle v Gamble</u>, 429 U.S. 97, 102 (1976).

Can it then be said that "Itkowitz" cannot be considered a reason-
able person, and he believed his actions or ommissions could not be
violative?  To the contrary. "Itkowitz" could not have possessed his
official position in the USMS and as supervisor of the air transport
in question, had he been recognized as a unreasonable person, nor could
his obvious constructive knowledge of the Plaintiff, and his needs
which could be inferred from the record, the widespread extent of the
practices, general knowledge of those needs, manifest opportunities
and official duty; <u>Spell v McDaniel</u>, 824 F.2d at 139; <u>Thompson v City</u>
<u>of Los Angles</u>, 885 F.2d 1439, 1444 (9th Cir. 1989) compare <u>Farmer v</u>
<u>Brennan</u>, 114 S.Ct. 1970 (1994)

As far back as 1904 in the case of <u>Aikens v Wisconsin</u>, 195 U.S. 194
the United States Supreme Court has expressed that one who intentionally
causes injury, eventhough injury may occur without harm and harm without
injury to another is subject to liability to the one injured, when
the conduct is generally culpable and not justifiable under the circum-
stances, and "Itkowitz" is inescapably held to prove his actions were
justified; <u>Gale v Ryan</u>, 263 App. Div. 76, 31 N.Y.S.2d 732.

Courts' have held that injury includes emotional harm as well,
but intrestingly enough no injury needs to be proven to state a viable
claim; <u>Boretti v Wiscomb</u>, 930 F.2d 1150, 1154-55 (6th Cir. 1991). But

-8-

for the sake of arguendo, to constitute an assault and battery it is
not even requisite to touch a complainant or anything connected to
that person, if the actions by a defendant is of an offensive manner,
which includes, intentional invasion, humiliation, indignities, or
actual physical injury, which end resulted in Plaintiff's emotional
suffering; Review  Court of Special Appeals, Emtional Distress § 46
(1965) Restatement (Second) of Torts Ch.2. and W. Prosser, Law of Torts
§ 12 at 56 (4th Ed. 1971), also see Emtional Harm Theory, White; 9 House
L.Rev. 889 (1972)

The Plaintiff's claims of his constitutional and civil rights
have been sufficiently presented and taking into account the evolving
maturity of society, he has satisfied the de minimis requirements
established in Hudson v McMillian, 112 S.Ct. 995, 1000, 117 L.Ed.2d
156 (1992).

Plaintiff further asserts that mere inconvenience is not the issue
with "Itkowitz," and for the defense to minimize what negative impact
"Itkowitz's" actions and ommisions caused the Plaintiff, further speaks
of that defendant's disregard for constitutionally protected rights,
even if those rights are enjoyed by prisoners.

### D. "Itkowitz" was  a state actor under 42 USC § 1983:

The evidence shows that "Itkowitz" was acting under color of state
law, and was a state actor, and was in a "symbiotic relationship" during
the challenged action; Kali v Bowen, 854 F.2d 329, 331 (9th Cir. 1988)

In his defense he presented claims that he was given authority
to do what he did to the Plaintiff by virtue of an "Intergovernmental
agreement" supported by the Director of the Office of Management and
Budget, whom agreed to provide a specialized service to the Alaska
DOC under 31 U.S.C. § 6505(b) but not until certain procedures take

from the requestor take place first. Under (1) of the "Code" there must first be a "written request made by the state or local government, then once thats accomplished, it must include a statement of payment and all other identifiable costs of providing the **service.** See (2).

To bolster his claims "Itkowtiz" copied the Plaintiff a document entitled **COOPERATIVE** PRISONER TRANSPORTATION AGREEMENT, which lays out 6 apparent clauses. In "Itkowitz's" motion for summary judgment he stated that "To transform a federal official into a state actor" a showing must be made that the federal and state officials engaged in a symbiotic relationship.. Webster's Dictionary II Revised Ed. New River-Side, at 684, defines symbiosis as "**when mutually advantages**" . Then the defense furthered it's stance by stating that there must be a "joint participation in the challenged action" and/or a joint venture that can be "fairly attributted to the state;" Kletschka v Driver, 411 F.2d 436, 449 (2d Cir. 1969; before violation of a person's rights under the Constitution: or federal law is apparent; Cabrera v Martin, 973 F.2d 735, 742-43 (9th Cir. 1992).

In reviewing the "agreement" the title itself conjures up a joint participation or "cooperative" agreement to transport prisoners, but let's review the the 6 "clauses." The first clause (Exhibit A at I)  it just reiterates the "Code" which authorizes the USMS to provide a service, when requested to , and when payment arraignments have been established by the requestor. The second clause states in pertinent part "The Department of Corrections, State of Alaska **designates** the U.S. Marshal or his assigned Deputies **as it's agent(s)** for the purpose of transporting prisoners from here to there. In Black's LAW Dictionary 8th Edition at p. 68 it defines the word "agent" as "Something that produces an effect" "One who is **authorized to act for or in place of another.**"

a representative. (see Exhibit C)

The third clause establishes that the State of Alaska DOC will defend the Marshal Service and it's employees from any claim or lawsuit made against them directly arising out of the Marshals participation in the agreement, unless the Marshal(s) actions were wilful, intentional, or regarded as reckless misconduct. The State of Alaska DOC then states that should such claims made in a lawsuit be determined by them to be frivolous they would defend and indemnify the Marshal(s). However, the State of Alaska , nor the DOC have taken up the fight for "Itkowitz" apparently having determined that his actions against the Plaintiff were wilful,intentional, reckless and not frivolous.

The fourth clause establishes whom is requesting and paying for the service, and who is performing that service. This conjures up a manifestation of consent by one person to another, to act on his behalf for payment, in a deligation of authority. Deligation of authority is defined as "the act of empowering to act for another" See Webster's New Collegate Dicitionary 7th Ed. The "agreement" sets out the promisee (Alaska DOC) and promisor (USMS/JAPTS) in that the promisor promises to do something for the promisee for payment. This then suggests a joint action or venture; Howerton v Garcia, 708 F.2d 380; Flagg Brothers Inc. v Brooks, 436 U.S. 149, 164, 56 L.Ed.2d 185, 98 S.Ct. 1729 (1978).

Both parties are enriched. But what of the state's significant par-ticipation in the challenged activity?  Therein the fifth clause.

This clause shows that the Alaska DOC was activly participating in the venture, not only with it's presence on the air transport, but by giving the USMS/JPATS members vital "factors regarding the prisoners' such as those of the Plaintiff, they would not have otherwise been aware.

Finally the most ambiguous clause of them all. Clause six states

-11-

that the USMS and not JPATS will transport and house the prisoners in
accordance with service policies and procedures for federal prisoners.

When did the State of Alaska DOC relinquish jurisdiction of the
Plaintiff making him de facto, a federal prisoner, and if that in fact
took place then were the violations against the Plaintiff done to him
when he was  a de facto federal prisoner under color of federal law?

Moreover, the "service policies and procedures" spoke of in the
agreement were they designed to deprive a "prisoner" of some rights
during air transportation? Perhaps more discovery is required.

What violations under color of state law did "Itkowitz" violate
as a state actor? In reviewing Alaska Statute (herein after AS)
AS11.76.110 Interference with Constitutional Rights. Under section (a)
a person commits the **crime** of interfering with a Constititonal right
if (1) the person injures, oppresses, threatens, or intimidates another
person with intent to deprive that person of a right, privilege, or
immunity in fact granted by the Constitution, or laws of the state (2)
the person intentionally injures, oppresses, threatens or intimidates
another person because that person has exercised or enjoyed a right,
privilege, or immunity in fact granted by the Constitution or laws of
this state or (3) under color of law, ordinance, or regulation of this
state or a municipality, or other political subdivision of the state
the person intentionally deprives another of a right, privilege, or
immunity in fact granted by the Constitution or laws of this state,
and to determine this is a question of law. Interference of a Consti-
tutional right is a Class A misdemeanor. (see § 9 Ch. 166 SLA 1978).

The record clearly indicates and adequately establishes that the
Plaintiff qualifies as a person with a disability, and as such the State
of Alaska procures AS47.80.010 Rights of Persons with Disabilities.

-12-

In reference to AS11.76.110, the Plaintiff attempted to exercise rights granted him under color of state law (see AS47.80.010 below) and also attempted numerous times    throughout the air-transport to advise various members of the flights crew, including "Itkowitz" of his special needs, and the A.D.A. which they claimed they knew nothing about. Plaintiff did so with clear, concise and unprofane language meant to properly inform the "crew" of those special needs, only to be subject-ed to total and utter disregard, and subsequent humiliations, threats, embarassments, and assaults by "Itkowitz." When the Plaintiff made his needs for the "specially packaged supplies" known to the USMS, including "Itkowitz" no one, not even the Alaska DOC members took action to remedy the problem, allowing the deprivation they promised would not occur, to occur. Thus, "Itkowitz" acted in concert with the state members to deprive the Plaintiff of meaningful  access to the restroom facilities, such as they were, and thus a civil right; Scott v Rosenberg, 702 F.2d 1263, 1269 (9th Cir. 1983)(quoting; United States v Classic, 303 U.S. 299, 326, 85 L.Ed. 1368, 61 S.Ct. 1031 (1941)).

It stands to reason that if the state members failed to act, then "Itkopwitz" seen no reason to seek out the specially packaged supplies for one prisoner, thus it can be argued that he misused his power with the blessings of the state; Lopez v Dept.' of Health Services, 939 F.2d 881, 883 (9th Cir. 1991) and see Monroe v Pape, 365 U.S. 167, 5 L.Ed.2d 497, 81 S.Ct. 473 (1961).

In Lopez supra. the 9th Circuit Court of Appeals dismissed the district court's order dismissing Lopez's case, and remanded it back to the trial court, because [h]e had in fact stated a colorable claim under § 1983. He had presented that Department of Health Services (harein after DHS) were under contract to the state of Arizona and that

-13-

either the "joint action test" or the "governmantal nexus test" applied,
wherein Lopez had shown that DHS had acted under color of state law,
and had deprived him of a constitutional right to government subsidized
health care. Since the "joint action test" has been discussed above,
so under the "governmental nexus test" a person acts under color of
state law if "there is a sufficiently close nexus between the State
and the challeneged action; <u>Jackson v Metropolitan Edison Co.</u>, 419 U.S.
345, 351, 42 L.Ed.2d 477, 95 S.Ct. 449 (1974)(constitutional deprivation
caused by private party involves state action if claimed deprivation
resulted from exercise of a right or privilege having it's source in
state authority, citing <u>West v Atkins</u>, 487 U.S. 42, 108 S.Ct. 2250,
2258, 101 L.Ed.2d 40 (1988)) In the instant case it is arguably recorded
that (1) the State of Alaska DOC and the USMS had a equally advantages
agreement, and joint venture, and (2) that they worked in concert to
deprive the Plaintiff of meaningful access to the restroom, specially
packaged supplies for self care.

The constitutional right and privilege deprived the Plaintiff that
had it's source in state authority is delineated in AS47.80.010 where
it states Persons with disabilities have the same legal rights and re-
sponsibilities guaranteed all other persons by the Constitution of the
United States and federal laws and by the constitution and laws of the
state. An otherwise qualified person may not be excluded, by reason
of having a disability, from participating in, be denied the benefits
of, or be subjected to discrimination under any program or activity
that receives public funds (e.g. the initial federal funding of a JPATS
flight). Some persons with disabilities may be unable, due to the
severity of their disability, to exercise for themselves all of their

-14-

rights in a meaningful way; for modification of some or all of their
rights is appropriate. The **procedure** used for modification of rights
must contain proper legal safeguards against every form of abuse, must
be based on an evaluation of the social capability of the person by
qualified experts, and must be subject to periodic reviews and the right
to appeal to a higher authority.

In this case "Itkowitz" is not immune from personal capcity suit,
and is liable as a federal officer for the actions he choose to take
under color of state law, resulting in deprivations of federally protect-
ed rights of the Plaintiff; Hafer v Melo, 502 U.S. 21, 112 S.Ct. 358
(1991) and see Wyatt v Cole, 112 S.Ct. 1827 (1992).

In the instant case summary judgment is not appropriate, due to
the evidence presented by Plaintiff of "Itkowitz" subjective knowledge
of relevant risks caused by the deliberate indifference to Plaintiff's
special needs, which creates one of many genuine issues of material
fact; McElligott v Foley, 182 F.2d 1248 (C.A. 11 Fla. 1999) under both
the subjective standard, as expressed above, and the objective standard
proven in the record; Farmer supra.

## CONCLUSION

The Plaintiff's complaint should not be dismissed.

Respectfully submitted this ___ day of June, 2008 at Red Rock
Correctional Center in Eloy, Arizona.

By: _____
                            Jack A. Earl, Jr. / Plaintiff
                            Pro Se

-15-