NELSON P. COHEN
United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail:  richard.pomeroy@usdoj.gov

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JACK LAWRENCE EARL, JR.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MIKE ADDINGTON, et. al.,<br><br>　　　　Defendants. | Case No. 3:06-cv-00126-TMB<br><br>**DEFENDANT ITKOWITZ'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

　　　　Defendant Matthew Itkowitz, an employee of the United States Marshals Service (USMS), has moved for summary judgment and dismissal of any claim by Plaintiff under 42 U.S.C. § 1983, which provides a remedy for deprivation of Federal constitutional rights by persons acting under color of state law.  Defendant submits the following reply to Plaintiff's  Opposition.

　　　　<u>First</u>, Alaska's two year statute of limitations for personal injury lawsuits applies to any claim

for relief under 42 U.S.C. § 1983.[1] It remains undisputed that Plaintiff was aware of his alleged injuries when they occurred in December 2003 and that Plaintiff did not file this action until May 30, 2006, well after the two-year limitations period. While Plaintiff may have had an administrative grievance and claim process as to the State of Alaska and its correctional employees, there was no such administrative claim to exhaust or remedy to obtain as to Defendant Itkowitz, a federal employee. Thus, Plaintiff's claim against Defendant Itkowitz should be dismissed as untimely.

Second, Itkowitz's alleged actions did not violate any constitutionally protected rights. Earl's claim that he could not access his colostomy supplies during his flight to Arizona, does not constitute a claim for "deliberate indifference to medical needs" under the Eighth Amendment. "[M]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."[2] A prisoner must show deliberate indifference to serious medical needs to establish a violation of the Eighth Amendment based on prison medical treatment under § 1983[3]. To establish a claim for "deliberate indifference" a plaintiff must show: (1) a serious medical need that, if not treated, could result in significant injury or the unnecessary and wanton infliction of pain and (2) that prison officials acted with deliberate indifference in responding to this need.[4] Courts will not generally find deliberate indifference if the harm complained of is an isolated

---

[1] AS 09.10.070; *City of Rancho Palos Verdes, Cal. v. Abrams* 544 U.S. 113, 124 n. 5 (2005) (citing *Wilson v. Garcia,* 471 U.S. 261 (1985)).

[2] *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), *reh'g denied* 429 U.S. 1066 (1977)).

[3] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle*, 429 U.S. at 104).

[4] *Jett v. Penner*, 439 F.3d at 1096 (9th Cir. 2006) (citing *McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir.1991) *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104

exception to the prison official's overall treatment of the prisoner.[5]  A rigorous standard for establishing "deliberate indifference" is applied because

> [t]he Eighth Amendment is not a basis for broad prison reform. It requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable. Rather, the Eighth Amendment proscribes the "unnecessary and wanton infliction of pain," which includes those sanctions that are "so totally without penological justification that it results in the gratuitous infliction of suffering."[6]

Earl's claim regarding the absent colostomy supplies does not meet the standard for deliberate indifference.  There was no wanton denial of medical care by Defendant Itkowitz nor was there any resulting significant injury or infliction of pain.  Further, there is no claim that Itkowitz had control over the medical supplies that were (or were not) provided, by Alaska correctional employees, for the transport flight.

Earl's claims that Itkowitz harassed him about his disability and his status as a prisoner and that Itkowitz assaulted him during the flight fail to establish a cognizable constitutional claim.  The Eighth Amendment ban on cruel and unusual punishment does not include *de minimis* uses of physical force, so long as the force used is not "repugnant to the conscience of mankind."[7]  Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a

---

F.3d 1133 (9th Cir.1997) **(en banc))**.

  [5] *McGuckin v. Smith,* 974 F.2d at 1060.

  [6] *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir.2002) (citing *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir.1982)**.**

  [7] *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (citing *Whitley,* 475 U.S. 312, 327, (1986))**.**

Case 3:06-cv-00126-RRB   Document 146   Filed 06/23/2008   Page 4 of 8


prisoner's constitutional rights.[8]  Even a "malevolent touch" by a prison guard may not be a proper basis for a constitutional claim.[9]  Earl's vague assault allegations and the lack of any resulting personal injuries, do not rise to the use of physical force that would be shocking or repugnant to the conscience of mankind.

Earl's claim that Itkowitz's statements about Earl's colostomy constituted an unconstitutional dissemination of Earl's medical information is unfounded.  The Ninth Circuit has recognized that "[i]ndividuals have a constitutionally protected interest in avoiding 'disclosure of personal matters,' including medical information."[10]  However, in order to violate a constitutional guarantee of privacy, a government official must realize that information regarding an individual's medical status is the type of medical information that would be legally protected.[11]  For example, some courts have ruled that the purposeful and unnecessary disclosure of an inmate's HIV status to the prison population at large violated the prisoner's expectation of privacy.[12]  In this case, however, Earl accuses Itkowitz of discussing - albeit rudely - a routine and ongoing medical situation, with Earl himself.  Prior to departure, Earl had already "made his disability needs known to the flight staff."[13]  Earl does not

---

[8] *Hudson v. McMillian*, 503 U.S. at 9 (citing *Johnson v. Glick,* 481 F.2d, at 1033.)

[9] *Id*.

[10] *U.S. v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1137 (9th Cir. 2008) (Thomas, concurring in part and dissenting in part) (citing *Tucson Woman's Clinic v. Eden,* 379 F.3d 531, 551 (9th Cir.2004)).

[11] *Doe v. Attorney General of U.S.*, 941 F.2d 780, 796 (9th Cir. 1991).

[12] See *Woods v. White,* 689 F.Supp. 874, 875 (W.D.Wis.1988), **aff'd** 899 F.2d 17 (7th Cir.1990).

[13] Plaintiff's Opp. p. 3.

allege that any staff or prisoners who might have overhead Itkowitz's comments were unaware of Earl's medical condition; nor does he allege any injury suffered from this alleged disclosure. Thus, Itkowitz's comments to Earl about his medical condition, even if crude or insulting, did not constitute a violation of Earl's constitutional rights.

Finally, even if the Court were to find that Earl's claim was timely and that it alleged a cognizable constitutional violation, the claim should still be dismissed because Itkowitz was not a "state actor." Federal officials who violate federal rights protected by § 1983 generally do not act under 'color of state law.'[14] Federal officials sued in their official capacity may be subject to *injunctive* relief under § 1983 when they "conspire with or participate in concert with state officials who, under color of state law, act to deprive a person of protected rights."[15] In this case there was no such federal-state conspiracy to violate Earl's rights, and Itkowitz was acting pursuant to his duties as a USMS employee, under the color and authority of federal law.

A federal official does not become a state actor unless the state has "so far insinuated itself into a position of interdependence with... [the federal official] that it must be recognized as a joint participant in the challenged activity."[16] A plaintiff must demonstrate this interdependence by showing that federal and state officials engaged in a "symbiotic" venture to violate a person's federal

---

[14] *Kali v. Bowen*, 854 F.2d 329, 331 (9th Cir. 1988) (citing *Olson v. Norman,* 830 F.2d 811, 821 (8th Cir.1987)**.**

[15] *Cabrera v. Martin*, 973 F.2d 735, 741 (9th Cir. 1992).

[16] *Cabrera v. Martin*, 973 F.2d at 742 (citing *Kletschka v.. Driver*, 411 F.2d 436, 449 (2nd Cir. 1969)).

rights.[17]  To establish this "symbiotic" relationship the "state must be a significant participant, if not the chief actor, to transform a federal defendant into a state actor."[18]

In *Askew v. Bloemker*[19] the court ruled that numerous defendants, some employed by a federal agency and some employed both by a federal agency and by the St. Louis Police Department, did not act under color of state law or in conspiracy with state agents when they raided the plaintiff's home. The raid was conducted pursuant to a federal investigation, and the defendants' activities were directed by and subject to the immediate control of federal supervisors. The state employees, however, also remained accountable to state supervisors. All defendants were paid out of federal funds and were covered by the Federal Employees Compensation Act during the time they were working as part of the federal task force. All defendants were provided with Justice Department credentials, and the part-time state employees continued to carry their Police Department badges. One of the state-affiliated officials presented his Police Department badge as opposed to his Justice Department credentials when gaining admission to the plaintiff's home.[20]  Considering the "totality of the circumstances surrounding the alleged raid," the court found that the facts "cast an indelibly federal hue upon the activities of the[] agents, even though they maintained official links with [the state]."[21] .

---

[17] *See e.g. Cabrera v Martin*, 973 F.2d at 331; *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988); *Gibson v. U.S.*, 781 F.2d 1334, 1343 (9th Cir. 1986).

[18] *Cabrera v Martin*, 973 F.2d at 743.

[19] *Askew v. Bloemker*, 548 F.2d 673 (7th Cir. 1976).

[20] *Askew v. Bloemker*, 548 F.2d 673, 677-78 (7th Cir. 1976).

[21] *Id*. at 677.

Earl v Addington, et. al.
Case No. 3:06-cv-00126-TMB                6

Itkowitz was a federal employee in charge of transporting prisoners via USMS aircraft. This transportation was authorized and arranged pursuant to federal authority. Itkowitz did not act under the supervision of or in conspiracy with the Alaska department of corrections. Itkowitz performed the duties that were assigned to him as a USMS employee and at no point did he act pursuant to state policies or procedures for handling prisoners. The fact that a federal agency agreed to help transport state prisoners does not turn that agency's employees into state actors. Similarly, the fact that a state prisoner is placed on a federal aircraft does not turn the federal crew into state actors.

Therefore, Defendant respectfully requests that the Court grant the Defendant's motion for summary judgment on Plaintiff's claim for relief under 42 U.S.C. § 1983.

Respectfully submitted this 23rd day of June, 2008, in Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/Gary M. Guarino
For Richard L. Pomeroy
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov
AK #8906031

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2008,
a copy of the foregoing **DEFENDANT
ITKOWITZ'S REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** was served
via U.S. mail and electronically on:

U.S. Mail
Jack Lawrence Earl, Jr.
302235
RED ROCK CORRECTIONAL CENTER/CCA
1750 E. Arica Road
Eloy, AZ 85231

Electronically
John K. Bodick


s/ Richard L. Pomeroy