IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JACK LAWRENCE EARL, JR.,<br><br>    Plaintiff,<br>vs.<br><br>MIKE ADDINGTON, et al.,<br><br>    Defendants. | Case No. 3:06-cv-00126-TMB<br><br>ORDER GRANTING<br>MOTION TO DISMISS<br><u>DEFENDANT EVENSON</u> |

## I. MOTION PRESENTED

On May 30, 2006, Jack L. Earl, Jr., a self-represented state prisoner, filed a civil complaint under Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, or in the alternative, 42 U.S.C. § 1983.[1] Earl filed an amended complaint, as ordered by the Court, on June 1, 2006.[2] On November 26, 2007, Defendant Michael Evenson, a S.O.R.T. team officer, moved to dismiss all claims against him under Federal Rule of Civil Procedure 12(b).[3] Earl has filed a response, and Evenson has filed a reply.[4]

---

[1] *See* Docket No. 1.

[2] *See* Docket No. 77. Earl was ordered to amend his complaint to name the specific individual S.O.R.T. team members he wished to name as defendants. *See* Docket No. 65.

[3] *See* Docket No. 103.

[4] *See* Docket Nos. 118 - 124, 129, 130.

## II.  BACKGROUND

Jack Earl, who wears a colostomy pouch, was transferred by air from Alaska to the Florence Correctional Center in Arizona, in December, 2003.[5] Earl claims that, before he left the plane in Arizona, Defendant Itkowitz, who had mistreated Earl on the plane, spoke with several S.O.R.T. officers in black riot gear, pointing Earl out to the officers.[6] Earl alleges that S.O.R.T. Officer Evenson, slammed Earl "several times against a van... causing injury and pain."[7] When Earl asked why he was being mistreated, one officer responded, "we were told about you, shut up!"[8]

Earl also alleges that Evenson then placed him in a small segregated caged area of the van, where he was left by himself for hours, even though he explained about his full colostomy pouch and restroom needs.[9] And when he was finally taken out, Evenson put him in a 3x3 foot caged shower for another hour before his full restraints were finally removed.[10] Earl says that when he asked Mr. Evenson if he could use the restroom to attend to his full colostomy pouch, his request was denied, and he was made to wait yet another hour, until another employee came to his aid after a shift change.[11]

---

[5] *See* Docket No. 77 at 6.

[6] Docket No. 77 at 8; *see also* Docket No. 83 at 4.

[7] Docket No. 77 at 8.

[8] Docket No. 83 at 5.

[9] *See Id*; Docket No. 77 at 8.

[10] *See* Docket No. 77 at 8-9; Docket No. 83 at 5.

[11] *See* Docket No. 77 at 9; Docket No. 83 at 5.

### III.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), "the federal courts may not dismiss a complaint unless 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"[12]  Under Rule 12(b)(6), the Court must determine, "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."[13]

Generally, a "complaint need only satisfy the Rule 8(a) notice pleading standard... to survive a Rule 12(b)(6) dismissal."[14] Further, in conducting its review of a self-represented plaintiff's pleadings, the Court is mindful that it must liberally construe the complaint, and give the plaintiff the benefit of any doubt.[15] "Rule 12(b)(6) does not countenance... dismissals based upon a judge's disbelief of a complaint's factual

---

[12] *Davel Communications, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1088 (9th Cir. 2006) (quoting *Kwai Fun Wong v. United States*, 373 F.3d 952, 956-57 (9th Cir. 2002) (quoting *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 514 (2002))).

[13] *Swartz v. KPMB LLP*, 476 F.3d 756, 763 (9th Cir. 2007), quoting *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003).

[14] *Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3d 1097, 1103 (9th Cir. 2008).

[15] *See, e.g., Jackson v. Carey*, 353 F.3d 750 (9th Cir. 2003) ("Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers.").

...

allegations."[16] But in order to survive a motion to dismiss, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above a speculative level."[17]

## IV. DISCUSSION

### Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), exhaustion of administrative remedies is required for all prisoner suits seeking redress for prison circumstances or occurrences, regardless of whether they involve general circumstances of incarceration or particular episodes, and whether they allege Eighth Amendment violation based on use of excessive force or some other wrong.[18] And the PLRA's "exhaustion requirement plainly applies to private prisons."[19]

Further, administrative exhaustion is required before filing ADA or Rehabilitation Act claims.[20] "The Supreme Court has emphasized that the exhaustion requirement in the PLRA means what it says. Specifically, 'exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under §

---

[16] *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (quoting, *inter alia*, *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

[17] *Id.*

[18] See *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Johnson v. California*, 543 U.S. 499, 528 n. 1 (2005).

[19] *Roles v. Maddox*, 439 F.3d 1016, 1017-18 (9th Cir.), *cert. denied*, 127 S.Ct. 232 (2006).

[20] See *O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056 (9th Cir. 2007).

allegations."[16] But in order to survive a motion to dismiss, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above a speculative level."[17]

## IV. DISCUSSION

### Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), exhaustion of administrative remedies is required for all prisoner suits seeking redress for prison circumstances or occurrences, regardless of whether they involve general circumstances of incarceration or particular episodes, and whether they allege Eighth Amendment violation based on use of excessive force or some other wrong.[18] And the PLRA's "exhaustion requirement plainly applies to private prisons."[19]

Further, administrative exhaustion is required before filing ADA or Rehabilitation Act claims.[20] "The Supreme Court has emphasized that the exhaustion requirement in the PLRA means what it says. Specifically, 'exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under §

---

[16] *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (quoting, *inter alia*, *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

[17] *Id.*

[18] See *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Johnson v. California*, 543 U.S. 499, 528 n. 1 (2005).

[19] *Roles v. Maddox*, 439 F.3d 1016, 1017-18 (9th Cir.), *cert. denied*, 127 S.Ct. 232 (2006).

[20] See *O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056 (9th Cir. 2007).

1983.'"[21] And "the Supreme Court has made clear that the PLRA requires a prisoner to exhaust the *prison's* internal grievance process."[22] This is so that prison officials have a chance to address, and perhaps resolve, a dispute before the issue is taken to court.[23] "And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy."[24] Thus, the doctrine of exhaustion of administrative remedies avoids the "premature interruption of the administrative process."[25]

Evenson initially stated that Earl never gave notice to the prison that Evenson had used unnecessary force against him when he arrived in Arizona.[26] Earl, however, has disputed that contention, and filed a copy of an "incident report" he submitted to prison officials describing the incident.[27] Earl contends that he "grieve[d] the mistreatment [by] the defendant right after [Earl's] release from segregation ... just before he was sent back to segregation." In the incident report he submitted to the defendant, Earl states that he "saw the little U.S. Marshal pointing up at me, standing

---

[21] *Id.* at 1061.

[22] *O'Guinn* at 1062.

[23] *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006); *see also Porter v. Nussle*, 534 U.S. at 525 ("corrections officials [should have the] time and opportunity to address complaints internally before allowing the initiation of a federal case."); *O'Guinn*, 502 F.3d at 1061 ("The Supreme Court has noted that in enacting the PLRA, Congress intended it to apply to all federal laws with respect to prisoner suits, with the intent that prison officials would have the first opportunity to address prison conditions.").

[24] *Porter v. Nussle*, 534 U.S. at 525

[25] *McKart v. United States*, 395 U.S. 185, 193 (1969).

[26] *See* Docket No. 103.

[27] *See* Docket No. 118 at 3, Docket No. 118-3 (Exhibit 1).

with a large guy in black. ... When [they] got to the van [Earl] asked the large guy why [Earl] was being roughed up.  He slammed [Earl's] head into the side of the van, and when [Earl] protested he stated 'shut up, and don't look at me,' slamming Earl's head and part of [his] face into the side of the van again.  [Earl] told [Evenson that] he was hurting him, and that it wasn't necessary because [Earl] was not resisting, nor had he done anything wrong. ... [Earl] told the large guy in black, whose face was still completely covered, that [Earl] needed to empty his colostomy pouch because it was pulling down and causing [Earl's] groin to hurt.  He just looked at [Earl] and [swore at Earl, telling him to] 'shut up' .... [Earl] received bumps on [his] head [and] scrapes [on his] face[; his] shoulders hurt, [as well as his] groin area [which he] assumed was from having an over-full colostomy pouch."[28]

The Supreme Court has explained that the PLRA does not require that the prisoner name any specific individual in the grievance, in order to exhaust.[29]  Thus, a description of a situation and the officials involved, such as Earl gave, should be sufficient notice.[30]  Earl says that he never received a response from FCC, and that this document "simply disappeared."[31]

---

[28] Docket No. 118-3 at 1-2.

[29] See Id. at 923 ("[E]xhaustion is not *per se* inadequate because an individual later sued was not named in the grievances.").

[30] See Docket No. 118-3 at 1 ("I looked out my window and [saw] the little U.S. Marshal pointing up at me, standing with a very large guy in black. ... [who] slammed my head into the side of the van, and when I protested, he stated, 'shut up, and don't look at me, slamming my head and part of my face into the van again. ...'").

[31] Docket No. 118 at 3.

Evenson responded with another affidavit, stating that Earl did not "properly" exhaust his administrative remedies, when he used a paper entitled "incident statement" rather than "grievance."[32]  Evenson argues that Earl knew how to file a "grievance," as indicated by the nine grievances he filed during the first 30 days after he arrived at FCC, none of which dealt with Evenson's behavior.[33]  Evenson also argues that Earl was "intimately familiar" with the grievance policy, having filed more than 40 grievances at Spring Creek Correctional Center.[34]

The question to be addressed, therefore, is whether the specific piece of paper on which the grievance was filed negates the substance of the notice given.  Through the incident report, someone in the prison was alerted to the problem.  However, this does not constitute exhaustion under the PLRA.[35]  The "incident report" is said to have a different purpose altogether.[36]  Earl was able to submit grievances about other matters shortly after he arrived in Arizona, grieving library issues, issues dealing with

---

[32] See Docket Nos. 120-24; 129-30.

[33] See, *e.g.*, Docket No. 120-2 at 8-12; Docket Nos. 120-3 - 120-9; Docket No. 123 at 5.

[34] See Docket No. 123 at 4.

[35] Compare *Bryant v. Sacramento County Jail*, 2008 WL 410608 *6 (E.D. Cal. Feb. 12, 2008) ("[T]he jail had a formal process. However, the evidence that the plaintiff proffered in opposition to summary judgment indicated that he was persistently denied access to that process. Indeed, the only form ever presented to him following his requests for the grievance form was that for a citizen complaint that was referred to Internal Affairs, not the actual form for pursuing and exhausting a jail grievance. Plaintiff's evidence is that he pursued every option made available to him. The one option not made available it the process for a jail grievance. There is no obligation to exhaust a remedy that is not 'available.'").

[36] *See* Docket No. 103-2 at 15; Docket No. 118-3; Docket No. 120-2 at 12-13; Docket No. 123 at 6.

clothing, food, requesting a handicapped sink and proper shelves, mattress, medication, vitamins, etc.[37]  Part of the exhaustion process involves making an attempt to informally address the problem first, which was a step Earl skipped by filing an incident report rather than a grievance.

As explained by the Supreme Court, "the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion. ...  Requiring proper exhaustion ... gives the prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors."[38]

The incident statement describing Evenson's alleged conduct was dated January 3, 2004, around the same time as Earl submitted his formal grievances as to other matters.[39]  Earl, therefore, failed to properly exhaust his administrative remedies as to defendant Evenson.  This failure to exhaust applies to all claims against Evenson, under any theory.[40]  The claims against Evenson, and his alleged reprehensible conduct must, therefore, be dismissed.

**IT IS HEREBY ORDERED:**

---

[37] See Docket No. 120-3, attachments (grievances).

[38] See *Woodford v. Ngo*, 548 U.S. 81, 93, 94 (2006).

[39] Compare attachments to Docket No. 120,  and Docket No. 118-3 (Incident Statement).

[40] See *Porter v. Nussle*, 534 U.S. at  532 (2002).

1.  The Motion at Docket No 103 is GRANTED in part and all claims against Defendant Michael Evenson are DISMISSED.

2.  Any outstanding motions in regards to defendant Michael Evenson are DENIED as moot.

DATED this 9th day of July, 2008, at Anchorage, Alaska.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE